(No. 74-CC-543— )

GALE WILLIAMS, Claimant, *vs.* BOARD OF TRUSTEES, SOUTHERN ILLINOIS UNIVERSITY, Respondent.

*Opinion filed May 12, 1975.*

ROBERT P. SCHULHOF, Attorney for Claimant.

JAMES B. BLEYER, Attorney for Respondent.

BURKS, J.

This matter comes again before the court for a ruling on respondent's motion for summary judgment in the light of the briefs and replies filed by both parties pursuant to our prior order entered August 9, 1974.

This is an action for libel, based on alleged libelous statements contained in 2 paid advertisements published in Southern Illinois University's "Daily Egyptian" on the first and third day of November, 1972. The second ad, substantially identical to the first, in space about 4 columns wide and 10″ high, reads as follows:

"Q. WHAT'S WORSE THAN A BAD CARBONDALE LANDLORD?

A. A BAD CARBONDALE LANDLORD WHO VOTES IN THE ILLINOIS LEGISLATURE.

As a state representative, Gale Williams voted against the following bills:

HB 2600 (1969) authorizing tenants to bring action against landlords to enforce compliance with building codes.

HB 53 (1971) requiring payment of interest on security deposits.

HB 2700 (1972) allowing tenants to make necessary repairs and deduct the cost from one month's rent when the landlord repeatedly refuses to do so.

H.B. 202 (1971) requiring installation of fire alarm systems in apartment buildings (Williams was one of only five representatives to vote against this bill which passed overwhelmingly).

Now Gale Williams wants to be a State Senator. The Student vote can make the difference.

GALE WILLIAMS HAS CONSISTENTLY VOTED AGAINST THE STUDENTS. THERE'S AN ALTERNATIVE TO GALE WILLIAMS. HIS NAME IS KEN BUZBEE.

Paid for by Better Housing thru Better Government, Doug Diggle, chairman (small type)"

Daily Egyptian, November 3, 1972, Page 17.

[The court takes notice that the same ad published two days earlier is identical in content except for the omission of the last three words, "Doug Diggle, chairman".]

Respondent's motion for a summary judgment is a procedure established by §57 of the Civil Practice Act. *Ill.Rev.Stat. 1973, Ch. 110§57.* The statute provides for the entry of summary judgment if there is no genuine issue of any material fact, and that the moving party is entitled to a judgment as a matter of law. The worthy purpose of this statute is to facilitate and expedite litigation, a procedure encouraged by our courts.

From our search of the record in the case at bar, we find no genuine triable issue of fact. The only issues presented are questions of law. We have not overlooked claimant's affidavit, the only affidavit in the record, but find that it contains merely conclusions of law based on facts already in the record which speak for themselves. *Carruthers* v. *B. C. Christopher Co., (1974) 57 Ill.2d 376.*

The pertinent issues of law presented in this case, as we view them, are:

■ Whether the advertisements, even if libelous, come within the privilege rules concerning criticisms made of public officials.

■ Whether the advertisements were published with actual malice.

■ Whether the words "bad landlord," as used in the advertisements, are libelous per se.

■ Claimant, at the time of the publications in question was a Representative in the General Assembly and a candidate for State Senator. For many years our courts have been creating exceptions to the common law rules of libel where the publications concern the conduct of a candidate for public office or a public official.

When a person becomes a candidate for public office, his qualifications and fitness for office are put before the

public and are therefore made a proper subject for fair comment by the press and the public in general. *Gogerty v. Covins, 5 Ill.App. 2d 74.* This principle of law has been clearly defined in *Ogren* v. *Rockford Star Printing Co., 288 Ill. 405 (1919)* when at page 417, the Supreme Court of Illinois held:

"When anyone becomes a candidate for public office, conferred by the election of the people, he is considered as putting his character in issue, so far as it may respect his fitness and qualifications for office, and everyone may freely comment on his conduct and actions. His acts may be canvassed and his conduct boldly censored."

In the landmark case of *New York Times* v. *Sullivan (1964) 376 U.S. 254; 11 L ed 686,* at page 706, the U.S. Supreme Court said:

"The Constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

Thus, under the rules of law enumerated in the *New York Times* case, the claimant in the case at bar would not be entitled to recover from the respondent, even if matters contained in the published advertisements were false, unless they were made with "actual malice" or they were libelous *per se.* We turn first to the question of malice.

■ Claimant bases his charge of "malice" solely on the grounds that the advertisements in question violate the statute dealing with publication of political litera-ture as stated in *Ill. Rev. Stat. Ch. 46 §29-14.* Without pointing out the alleged violation, claimant concludes that such disregard for the law shows respondent's reck-less disregard for the truth or falsity of the entire content of the advertisements and proves malice. This conclusion is without merit.

Claimant apparently is referring to the fact that the advertisements in question do not contain the address of the organization or person who caused the ads to be published as required by the statute cited. The first advertisement merely states that it was paid for by "Students for Better Housing Through Better Government". The second adds the words, "Doug Diggle, Chairman". This apparently is not sufficient identification to satisfy the statute. Claimant does not allege that the said group or its chairman were unknown or could not be located. However, according to the statute, *Chapter 46, Section 29-14*, the omission of adequate names and addresses is a "Class A misdemeanor". We do not equate this statutory penalty for such omission with grounds required to sustain an action for libel.

It should be noted that in the *Sullivan* case (Supra), the New York Times published an advertisement which contained 10 or 15 separate misstatements of fact. The evidence disclosed that the Times had in its own files information which would show the falsity of the allegations in the ad, and that they failed to search their own files. Yet the U.S. Supreme Court held the newspaper not guilty of libel. It follows, *a fortiori*, that the failure of the "Daily Egyptian" to notice the omission of adequate names and addresses on the political advertisements is not evidence that would remotely support claimant's contention that the advertisements published were conceived or inspired by a malicious design to injure the claimant in his business. (See *Lulay* v. *Peoria Journal-Star Inc., (1966) 34 Ill.2d 112, 116* and authorities therein cited.)

■ The final issue is whether the term "bad landlord," which claimant was called in the advertisements, are actionable *per se* as being that type of statement

which prejudices the claimant in his trade or profession if falsely communicated.

Claimant contends that the words "bad landlord" damaged his professional and business reputation which is unrelated to his conduct as a public official, or at least, not covered under the privilege rule in *Times* v. *Sullivan* (Supra).

We have carefully examined and will comment on the authorities cited in claimant's brief as follows:

*Stanley* v. *Taylor (1972) 4 Ill.App.3d 97* correctly states that Illinois courts have removed all distinctions between slander and libel, and that the same rules apply whether the offensive language is oral or written. However, the *Stanley* case gives no support to claimant's position. There a school teacher in the presence of witnesses said to her principal in a loud voice that could be heard in nearby classrooms, "I think you are plain stupid. You are a disgrace to your profession. You are just like that old Lee Harvey Oswald that shot and killed President Kennedy, and that old Jack Ruby who shot and killed him in Dallas". Yet the court held that this "slanderous" attack was not libelous per se.

In *Tunnell* v. *Edwardsville Intelligencer, Inc., (1966) 99 Ill. App.2d 28* the newspaper published a rumor that the city attorney was "attempting to break the law". The evidence showed that the rumor was false. The court held that the published language was not capable of an innocent construction, and that it was equally an attack upon his honesty and integrity as an attorney and as a city official. The facts have little resemblance to the case at bar.

We also fail to see any similarity in *Cook* v. *East Shore Newspapers Inc. (1945) 327 Ill.App. 559*. There

liability was found against the newspaper which accepted as true statements of a discharged employee and published an article, covering half of the front page, charging a city judge with selling jobs and dishonesty in discharging duties of his office. The publisher had made no investigation of the facts, showing a reckless disregard for the truth. Even so, the decision might have been different if it were made 20 years later, after the *New York Times* v. *Sullivan* decision of 1964.

It is the respondent's contention that use of the term "bad" is merely name calling and there is no specific act of which the claimant is accused. Respondent points out that use of the term in itself implies an opinion rather than a set of facts, and to say that someone is a bad person, a bad lawyer, or a bad landlord would not specifically accuse that person of any nefarious conduct or guilt.

We have noted in *Delis* v. *Sepsis (1972) 9 Ill.App.3d 217* that the plaintiff [who was a candidate for office in a fraternal association] was described in a published letter as "dishonorable" and as "being a deliberate liar." The court held that these words, somewhat stronger than the word "bad," were not libelous per se, and amounted to no more than "name calling" where such remarks were made in connection with particular facts set forth in the letter.

We find much more objectionable words held to be unactionable name calling in *McGuire* v. *Jankiewicz (1972) 8 Ill.App.3d 319,* where the court said at page 320:

"Turning then to the words used in the instant case, it is readily apparent that the statement 'your lawyer is an ass hole' is merely an example of objectionable but unactionable 'name-calling.' "

However, the court went on in *McGuire* to find that the following words were actionable slander, "You could not

have chosen a worse attorney." The court said that these words "had the effect of placing plaintiff as the least competent of all licensed and practicing attorneys." This latter statement obviously is so much stronger than the words "bad landlord" that the ruling is not applicable to the case at bar.

In searching for authorities in which an action for libel or slander is based on words somewhat closer to the term "bad landlord," we find in *Valentine* v. *North American Life & Health Ins. Co., (1973) 16 Ill.App.3d 277* the expression "lousy agent" was held to be nothing more than harsh judgment as to why agency was being terminated, and that these words are not actionable under the "innocent construction rule" adopted in Illinois. *John* v. *Tribune Co. (1962) 24 Ill.2d 437, 442.*

In the *John* v. *Tribune* opinion at page 442, the Illinois Supreme Court cited many cases in which the "innocent construction" rule has been followed and restates that rules as follows:

"That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law."

Having previously stated that we find no showing of actual malice against the claimant by the "Daily Egyptian," under the innocent construction rule in *Lulay* v. *Peoria Journal* (Supra) and *John* v. *Tribune Co.* (Supra), we now hold that the words "bad landlord," as used in the case at bar, are not actionable as a matter of law. We find strong support in *Watson* v. *Southwest Messenger Press Inc., (1973) 12 Ill.App.3d 968* in which published articles accused the mayor of Hickory Hills of criminal acts of official misconduct. In granting a summary judgment for the publisher, the court said at page 972:

"In the case at bar, even were we to assume that the newspaper articles are libelous per se and, therefore, actionable, we must conclude that these articles are conditionally privileged as a matter of law. There is a strong and necessary rule of law resting upon an ample foundation of state and federal constitutional guarantees of free speech and free press, that reports by a newspaper upon the activities of a municipal government or its officers are privileged, even though false and defamatory, and this privilege can be defeated only by proof that the particular publication was 'motivated solely by actual malice.' "

A summary judgment for the respondent is hereby granted and this claim is dismissed.