Margaret R. GROSSMAN, C. Kristina Gunsalus, and David R. Purnell, Plaintiffs,

v.

Winston I. SMART, Defendant, Counter-Plaintiff, and Third–Party Plaintiff.

v.

Margaret R. GROSSMAN and C. Kristina Gunsalus, in their individual capacities, jointly and severally, Counter–Defendants,

and

C. Allen Bock, in his individual capacity, Third–Party Defendant.

No. 92–1145.

United States District Court, C.D. Illinois, Peoria Division.

Nov. 24, 1992.

J. Steven Beckett, Urbana, IL, for plaintiffs.

John L. Conlon, Chicago, IL, for third party defendant.

Winston I. Smart, Madison, WI, for defendant.

## ORDER

MIHM, Chief Judge.

This written opinion is entered *nunc pro tunc* to the minute-entry dated October 21, 1992.

On September 25, 1992, Defendant Winston I. Smart filed a Motion for Summary Judgment for Counts II through VIII of the Plaintiffs' Complaint. On October 20, 1992, this Court heard oral arguments on the Motion. At that hearing, the Motion was granted in part and denied in part. On November 6, 1992, at the Final Pretrial Conference, Plaintiff David L. Purnell submitted a memorandum with respect to his status as a public figure in this action. On November 17, 1992, Smart submitted a response to Purnell's memorandum and a Motion for Reconsideration of Summary Judgment on Plaintiff's Count VIII.

Counts II, IV, and VI allege defamation actions contending, in relevant part, that Smart made false representations and statements concerning the fitness and integrity of the respective named Plaintiff in the performance of employment duties. Counts III, V, and VII allege defamation actions contending, in relevant part, that Smart made false statements and publications with malice imputing unfitness and want of integrity with respect to the employment duties of the respective named Plaintiff. Count VIII alleges an invasion of privacy action by Purnell against Smart.

In this written Order, the Court clarifies its oral holding of October 20, 1992, reconsiders the public figure status of Purnell, and reconsiders summary judgment as to Count VIII. The Court GRANTS summary judgment in favor of Smart on Counts II and IV, DENIES summary judgment in favor of the Plaintiffs on Counts III, V, VI, VII, and VIII, and upon reconsideration, finds that Purnell is not a Public Figure for purposes of this action. The Court's reasoning and findings are set forth below.

## DISCUSSION

■ Pursuant to Rule 56(c) summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *McGraw–Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1167 (7th Cir. 1986). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue may be resolved against the moving party. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 166, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Backes v. Valspar Corp.,* 783 F.2d 77, 79 (7th Cir.1986). A fact is material if it is outcome determinative under applicable law. *Shlay v. Montgomery,* 802 F.2d 918, 920 (7th Cir.1986). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986). Finally, summary judgment generally is not an appropriate means of resolving questions of motive and intent. *Bartman v. Allis—Chalmers Corp.,* 799 F.2d 311, 312 (7th Cir.1986).

In deciding a motion for summary judgment the trial court must determine whether the evidence presented by the party opposing the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by finder of fact because they may reasonably be resolved in favor of either party.

[T]his standard mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*See also: Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 496 (7th Cir.1986).

■ The prima facie case for a claim of defamation is well established and not disputed: (1) defamatory language on the part of the defendant; (2) the defamatory language must be of or concerning the plaintiff; (3) publication of the defamatory language by the defendant to a third person; and (4) damage to the reputation of the plaintiff. If the defamation refers to a public official or public figure or involves a matter of public concern, thus invoking First Amendment protection, two additional elements must be proven as part of the prima facie case. The plaintiff must prove (5) the falsity of the defamatory language and (6) fault on the part of the defendant, in addition to the four elements mentioned above.

At issue for purposes of this Motion is whether the various Plaintiffs in this case are public officials, public figures, or whether this is a matter of public concern, thus invoking the two additional First Amendment protections.

## PUBLIC OFFICIAL

■ In defining the term "public official," the Supreme Court has held that in order to encourage criticism of government the "public official" designation must apply "at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt*

*v. Baer,* 383 U.S. 75, 85, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966). In *Rosenblatt,* the Court went on to explain that:

> [w]here a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, ... [then] the *New York Times* malice standards apply.
>
> *Rosenblatt,* 383 U.S. at 85, 86 S.Ct. at 676.

A public employee, therefore, may be a "public official" even if the employee is not positioned at the top of the bureaucratic hierarchy. Persons publicly employed at low level technical positions might not be included in this category, but any government employee, however, holding discretionary power in matters of public interest qualifies as a public official. 4 Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law* § 20.33 (2d ed. 1992).

■ Plaintiffs Grossman and Gunsalus hold the requisite employment status to confer a designation of "public official" in this case. Grossman is a professor of agricultural law and served as Chairperson of the Search Committee that recommended Purnell's appointment to the University of Illinois. Gunsalus serves as the Vice Chancellor for Research and for Graduate College and assistant to the Chancellor of the University. Gunsalus also was the Hearing Officer in an administrative grievance hearing held for Smart at the University. The authority vested in these high level positions sufficiently confer public official status.

■ Plaintiff Purnell, however, does not satisfy the requirements for public official status. The University chose Purnell for the assistant professor of law position giving rise to this action. Prior to his appointment to that position, Purnell was not employed by the University. The facts do not indicate that Purnell had any decision-making responsibility either before or after he was selected for employment.

■ Based on the finding that Plaintiffs Grossman and Gunsalus are public officials, these Plaintiffs necessarily must establish the two additional constitutional elements of falsity and fault as part of their *prima facie case.* To establish fault, the Plaintiffs, as public officials, must show that Smart acted with actual malice—that is, with knowledge that the defamatory publication was false or with reckless disregard as to whether the publication was false. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). In the Complaint, Grossman and Gunsalus each plead two counts of defamation. One count included the element of fault and one count did not. This Court, therefore, grants summary judgment on the counts not alleging fault, Counts II and IV, in favor of Smart and against Plaintiffs Grossman and Gunsalus.

■ The element of fault, by the termed definition, necessarily includes a finding of intent or motive. Summary judgment under these circumstances would be inappropriate as it would require this Court to find as a matter of law that Smart lacked the requisite mental state to sustain this defamation action. This issue presents a question of fact. Therefore, this Court denies summary judgment in favor of Grossman and Gunsalus and against Smart as to Counts III and V.

## PUBLIC FIGURE

Following *Rosenblatt,* the Supreme Court broadened the constitutional First Amendment guarantees to include privacy actions. *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). In *Time, Inc.,* the Supreme Court distinguished a private individual who was thrust into the limelight for the purpose of one particular event. In that case, the Hill family became the subject of national news coverage when three escaped convicts held them hostage in their home. The Supreme Court applied the *New York Times* standard of "knowing and reckless falsity," to publications involving false reports on matters of public interest. *Time, Inc.,* 385 U.S. at 387–88, 87 S.Ct. at 542. While the Court applied the *New York Times* stan-

dard to the Hills' privacy action, the Court left open the question of whether the same standard of liability would be applicable in a libel action to persons voluntarily or involuntarily thrust into the public limelight. *Time, Inc.*, 385 U.S. at 390–91, 87 S.Ct. at 543–44.

Just six months later, the Supreme Court extended the application of the *New York Times* "actual malice" standard to alleged defamations against people who did not fall within the definition of "public official" but who were nonetheless "public figures." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In *Curtis*, the Court defined a "public figure" as those who are "intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large." *Curtis*, 388 U.S. at 164 87 S.Ct. at 1996 (Warren, C.J. Concurring).

Later, in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court explained that the term "public figure" included:

> those who attain this status [by assuming] roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classified as public figures have thrust themselves in the forefront of particular public controversies in order to influence the resolution of the issues involved.

*Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009. In *Gertz*, the Supreme Court divided public figures into two categories: (1) general purpose public figures; and (2) limited purpose public figures. A general purpose public figure is one who has "assumed roles of especial prominence in the affairs of society." *Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009. The *Gertz* Court sub-categorized limited purpose public figures, however, when the Court distinguished voluntary from involuntary public figures. *Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009. Voluntary public figures are persons who have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009. *Gertz* also acknowledged that a limited purpose public figure could include an involuntary public figure who has been drawn into a public controversy through no voluntary action of their own. *Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009. The *Gertz* Court stated that situations involving involuntary public figures would be "exceedingly rare." *Gertz*, 418 U.S. at 345, 94 S.Ct. at 3009.

■ Smart argues that Purnell fits within the category of a voluntary limited purpose public figure. Smart contends that Purnell's voluntary acts preclude an involuntary public figure analysis. The only undisputed voluntary act alleged by Smart, however, was Purnell's application for employment with the University. The other alleged voluntary acts raised by Smart turn on disputed questions of fact. Smart likens Purnell to a criminal charged with a crime and concludes that "[h]ad Purnell not committed intentional dishonest acts, this controversy would not have arisen." This Court cannot apply a "but for" test to disputed facts and hold as a matter of law that Purnell was a voluntary public figure in this case. Smart has not set forth any facts on which to conclude that Purnell voluntarily thrust himself into the forefront of this public controversy in order to influence the resolution of the issues involved. Based on the distinctions made by the Supreme Court and the facts of this case, Purnell could possibly fit only within the involuntary limited purpose public figure category.

■ The Supreme Court has pointedly stated that situations giving rise to involuntary public figure status exist only in exceedingly rare instances. Following *Gertz*, the Supreme Court has held that a plaintiff should not be characterized as an involuntary public figure merely because of an involvement in litigation. *See e.g., Wolston v. Reader's Digest Assoc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979) and *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976). For a person to rise to the level of an involuntary limited purpose public figure, that person must have been involved in a public contro-

versy prior to the defamatory statements. *Hutchinson v. Proxmire*, 443 U.S. 111, 134–35, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979). The *Hutchinson* Court reasoned that persons charged with defamation cannot create their own defense by making the claimant a public figure. *Hutchinson*, 443 U.S. at 135, 99 S.Ct. at 2688.

Smart argues that Purnell does qualify as an involuntary public figure under the facts of this case. Smart supports his argument with contentions that the public controversy involved here existed prior to the alleged defamatory publications and that Purnell actually participated in the controversy.

This Court cannot agree as a matter of law that the controversy involved in this case existed prior to the alleged defamatory publications. Smart states that on January 4, 1991, he filed a formal grievance with the University giving rise to this public controversy. The University provided Smart with the forum to redress his grievances even though Smart was not employed with the University. Yet Smart contends in his brief that the University attempted to cover up a public controversy by denying him access and a fair hearing. On the other hand, Smart points to this same administrative process in an attempt to convince the Court that the filing date of his grievance actually gave rise to this public controversy. Smart's argument is a *non sequitur* and unconvincing.

The issue here is at what point did an identifiable particular public controversy originate. On this issue in *Hutchinson*, the Supreme Court tried to balance the competing interests of "assur[ing] the vigorous debate on public issues that the First Amendment was designed to protect while at the same time affording protection to the reputations of individuals." *Hutchinson*, 443 U.S. at 134, 99 S.Ct at 2687. In *Hutchinson*, the plaintiff received federal funding for scientific studies, was made reference to in local newspapers, and made statements in other forms of media. Senator Proxmire awarded Hutchinson the Golden Fleece Award to publicize wasteful governmental spending. The Court held that Hutchinson was not a public figure prior to the controversy engendered by the Golden Fleece Award. *Hutchinson*, 443 U.S. at 135, 99 S.Ct. at 2688. The Court reasoned that Hutchinson's access to publicity came after the alleged libel. *Hutchinson*, 443 U.S. at 135, 99 S.Ct. at 2688.

In the instant case, Smart has not identified a particular public controversy involving Purnell prior to the alleged defamatory publications. If this Court was to hold that the mere filing of a grievance against an institution constituted a particular public controversy as to everyone attenuated from that grievance, this Court would render meaningless the Supreme Court's concerns raised in *Hutchinson*. The facts show in this case that Smart made Purnell a public figure by allegedly publicizing his name and academic transcript. Prior to that, Purnell received no public recognition. Purnell's application for the assistant professorship position hardly brings Purnell into publicity or controversy. Smart confuses the distinction between an identifiable particular public controversy with a matter of public concern. Every matter of public concern does not spontaneously create nor necessarily involve a particular public controversy. This Court, therefore, holds that the facts of this case do not support a finding that the "exceedingly rare" circumstances have been met making Purnell involuntary limited purpose public figure. *See also Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681 (4th Cir.1989) and *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir.1980).

## PUBLIC CONCERN

A few years later, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), in a plurality opinion, the Supreme Court held that the constitutional limits also apply to state liable laws involving expressions "on a matter of public concern," or "public speech." *Dun & Bradstreet*, 472 U.S. at 755–60, 105 S.Ct. at 2943–46. In *Dun & Bradstreet*, the plurality of the Court concluded that the recovery of punitive and presumed damages in defamation cases without any showing of actual malice did not violate the First Amendment if the alleged defamation did

not involve a matter of public concern. *Dun & Bradstreet*, 472 U.S. at 761, 105 S.Ct. at 2946. The Court in *Dun & Bradstreet*, however, did not elaborate as to what constituted a matter of public concern. The Court determined only that a credit agency's erroneous report of the plaintiff's bankruptcy, distributed to five subscribers, was "speech solely in the individual interest of the speaker and its specific business audience." *Dun & Bradstreet*, 472 U.S. at 762, 105 S.Ct. at 2947.

In *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), Justice O'Connor, for the majority, placed some light on the meaning of a "matter of public concern." In *Hepps*, a series of newspaper articles contained the general theme that the appellees had links to organized crime and that those links were used to influence the State's governmental processes. Without elaboration, the Court held that speech concerning the political process is of public concern. *Philadelphia Newspapers*, 475 U.S. at 778, 106 S.Ct. at 1564–65.

As these cases indicate, defining what constitutes a matter of public concern proves problematic for courts. In *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court stated that the context, form, and context of the publication must be considered in making determinations of what is a public concern. Further research, by this Court, for a more tangible test on this issue proved futile. The Court must, therefore, examine the contents of the publication and then apply a subjective analysis. *See* 4 Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law* § 20.35 (2d ed. 1992).

As the claims raised by Grossman and Gunsalus have already been determined to require the constitutional guarantees, this analysis pertains only to the claims raised by Purnell. Besides, this Court already has held, and the Seventh Circuit affirms, that racial discrimination involves a matter of public concern. *Purnell v. Smart*, 976 F.2d 735 (7th Cir.1992). As public officials for a public university alleged to have discriminated in employment, the matters involving Grossman and Gunsalus are of public concern.

The issue now before the Court is whether the publication of Purnell's law school transcript involved a matter of public concern. This is a difficult and close question for the Court. Smart mailed over 1500 letters to various people, institutions, and offices expressing his dissatisfaction with the University of Illinois' employment practices. Smart allegedly included a copy of Purnell's law school transcript with those 1500 letters indicating that Purnell failed two law school courses. The fact that the transcripts were sent as an attachment to other materials alleging racial discrimination serves as a nexus to the context of the University's hiring procedures. This nexus between the alleged discrimination and the transcripts sufficiently warrants a finding by the Court that the transcripts involved a matter of public concern.

■ When the defamatory publication involves a matter of public concern, *Gertz* holds that there can be no liability without fault and that recovery may include presumed and punitive damages. *Gertz*, 418 U.S. at 346, 94 S.Ct. at 3010. The Court stopped short of defining what level of fault was necessary. In *Gertz*, the Court left it to the states to define the appropriate standard of liability. *Gertz*, 418 U.S. at 347, 94 S.Ct. at 3010. The parties to this action have not briefed the issue of fault as required by Illinois law in this context. The Court, therefore, denies summary judgment in favor of Purnell and against Smart as to Counts VI and VII.

### RIGHT TO PRIVACY

In Count VIII, Purnell plead sufficient facts supporting a right to privacy cause of action in two contexts, false light publicity and public disclosure of private facts.

■ In Illinois, the tort of False Light publicity has three elements: (1) that the plaintiff is placed in a false light before the public as a result of the defendant's actions, (2) that the false light in which the plaintiff is portrayed is highly offensive to a reasonable person, and (3) that in cases

involving public figures or matters of public interest, the person giving the publicity acted with knowledge or reckless disregard of the falsity of the publicized information and the light in which the plaintiff would be portrayed. *Lovgren v. Citizens First National Bank*, 126 Ill.2d 411, 534 N.E.2d 987, 990–91, 128 Ill.Dec. 542, 545–46 (1989).

In viewing the facts in the light most favorable to the party opposing summary judgment, this Court cannot find as a matter of law that Purnell has failed to establish a *prima facie case* for false light publicity. Purnell has plead sufficient facts to satisfy the requirements of the first two elements of the *prima facie case.* As for element three, for the same reasons stated earlier with regards to Counts III and V, this Court cannot find as a matter of law that Smart lacked the requisite mental state to sustain this privacy action. Purnell plead that Smart acted with malice and wanton disregard. Summary judgment is not an appropriate means of resolving questions of motive and intent. Questions going to Smart's mental state are questions of fact. Therefore, the Court denies summary against Smart and in favor of Purnell as to Count VIII.

In Illinois, the tort of "public disclosure of private facts" has four elements: the plaintiff must show that (1) public disclosure was made, (2) of private facts, (3) that the public disclosure represents an intrusion on privacy which would be objectionable or highly offensive to a reasonable person, and (4) that the matter disclosed was not of legitimate concern to the public. *Miller v. Motorola, Inc.*, 202 Ill.App.3d 976, 560 N.E.2d 900, 902, 148 Ill.Dec. 303, 305 (1st Dist 1990). Unlike false light publicity, the issue of legitimate public concern is an element of this type of right to privacy action. Because this Court has already held that this is a matter of public concern, Purnell cannot satisfy the *prima facie* requirements to defeat summary judgment in a public disclosure of private facts tort action. This does not, however, preclude Purnell from maintaining an action under the false light theory. Summary judgment is still denied for Count VIII.

CONCLUSION

This Court holds that Plaintiffs Grossman and Gunsalus are public officials, Purnell is not a public figure, and that the matters involving Purnell are of legitimate public concern. Therefore, the Court Orders, for the reasons set forth above, that summary judgment is GRANTED on Counts II and IV and DENIED on Counts III, V, VI, VII, and VIII.