284 N.J. Super. 446 (1995)
665 A.2d 786
JOHN A. ORSO, THOMAS R. TESSARO AND SALVATORE CARERI, PLAINTIFFS-RESPONDENTS,
v.
LAURENCE GOLDBERG, DEFENDANT, AND THE BERGEN RECORD CORPORATION, GLENN RITT AND JEFF PILLETS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1995.
Decided October 18, 1995.
*449 Before Judges SHEBELL, STERN and WALLACE.
Mark S. Stewart argued the cause for appellants, The Bergen Record Corporation, Glenn Ritt and Jeff Pillets (Ballard, Spahr, Andrews & Ingersoll, attorneys; John B. Langel, Edward D. Rogers and Mr. Stewart, of counsel, Mr. Rogers, on the brief).
Dennis Calo argued the cause for respondent, John A. Orso, Thomas R. Tessaro and Salvatore Careri (Calo, Agostino & Merkin, attorneys; Mr. Calo, of counsel, and on the brief).
Thomas F. Cafferty argued the cause for Amicus Curiae, NJ Press Association (McGimpsey & Cafferty, attorneys; Mr. Cafferty and Arlene M. Turinchak, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiffs, Fort Lee Police Chief John A. Orso, Fort Lee Deputy Police Chief Thomas R. Tessaro, and Fort Lee Deputy Police Chief Salvatore Careri, filed a three count complaint based on defamation against defendants, Fort Lee City Councilmember Laurence Goldberg, The Bergen Record Corporation, a daily newspaper, its Publisher Glenn Ritt, and its Staff Writer Jeff Pillets on October 18, 1994.
Count One charged Goldberg with making false statements and accusations of criminal conduct against plaintiffs and other officers of the Fort Lee Police Department over a two year period. Count Two alleged that The Bergen Record published an article on June *450 9, 1994 which repeated Goldberg's defamatory statements and accusations. The count further alleged:
The statements and comments in the article concerning criminal conduct and improprieties on behalf of the plaintiffs, that plaintiffs were the subject of criminal investigations and that plaintiffs would be indicted were and are defamatory and false and were made with knowledge of their falsity or reckless disregard of their truth or falsity.
In Count Three, plaintiffs allege that the defendants' false, slanderous and libelous statements placed them in a false light before the general public and invaded their privacy.
On November 21, 1994, prior to filing an answer, The Bergen Record Corporation, Glenn Ritt and Jeff Pillets moved to dismiss the complaint as it pertained to them. On January 20, 1995, the Law Division judge heard argument on appellants' motion. On February 10, 1995, the judge issued a letter opinion denying the motion. This appeal, on leave granted by us, is from the February 23, 1995 order denying dismissal.
The judge found that the language of the newspaper article taken in context and considered as a whole was reasonably susceptible of a defamatory meaning since it tended to diminish plaintiffs' standing in the community. See Lawrence v. Bauer, 89 N.J. 451, 459, 446 A.2d 469 (1982). Appellants and Amicus Curiae, N.J. Press Association, maintain that although the statements were defamatory, the article still was validly published and appellants must be protected from a defamation action.
The Law Division judge in denying appellants' motion to dismiss noted that the fair report privilege covers the media when reporting judicial, legislative and other "public proceedings," but that "[i]n this case Mr. Goldberg's statements were in part obtained at a private interview as distinguished from statement made at a public proceeding," citing Costello v. Ocean County Observer, 136 N.J. 594, 643 A.2d 1012 (1994).
We find that the qualified privilege of the media to fairly report defamatory words or statements uttered by a public official and to report on matters of public interest affecting government and its *451 officials provides ample cause on the facts of this case to warrant summary judgment. We, therefore, reverse and remand for entry of an order of dismissal of the claims against appellants.
Privileges that restrict recovery for defamation reflect the "paramount public interest [in] permitting persons to speak or write freely without being restrained by the possibility of a defamation action." Swede v. Passaic Daily News, 30 N.J. 320, 331, 153 A.2d 36 (1959). In "narrowly defined instances," where the public interest in unrestrained communication outweighs the reputation interests of individuals, a privilege will work to defeat the right of redress. Fees v. Trow, 105 N.J. 330, 336, 521 A.2d 824 (1987); see Erickson v. Marsh & McLennan Co., 117 N.J. 539, 564, 569 A.2d 793 (1990).
Clearly those statements made by Councilmember Goldberg during a public proceeding were protected by a qualified privilege. Swede, supra, 30 N.J. at 332-34, 153 A.2d 36. "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence is reported." Restatement (Second) of Torts, § 611; and see Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 379, 149 A.2d 193 (1959) (adopting analogous rule in original Restatement); accord Reilly v. Gillen, 176 N.J. Super. 321, 328, 423 A.2d 311 (App.Div. 1980) (relying on the Restatement language to explain the fair-report privilege).
This doctrine, which has come to be known as the "fair report privilege," see Medico v. Time, Inc., 643 F.2d 134 (3d Cir.), cert. den. 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981), developed as an exception to the common law rule that a person who republishes a defamation uttered by another was subject to liability as if he or she were the original defamer. Id. at 137. The common law "fiction" that a republisher adopted the defamatory matter created special problems for the press. Ibid. When a newspaper republished a newsworthy account of one person's *452 defamation of another, by virtue of the common law rule, it was charged with publication of the underlying defamation. Ibid.
The fair-report privilege, if not an absolute privilege, is much broader than many other conditional privileges. The privilege will be held to protect the media publisher even though the publisher does not personally believe the defamatory words he reports to be true and even when he knows them to be false. Molnar v. Star-Ledger, 193 N.J. Super. 12, 21, 471 A.2d 1209 (App.Div. 1984); Restatement (Second) of Torts, § 600, comment a. In Molnar, supra, we found privileged the republication of a defamatory statement of a deputy fire chief, made during an interview, in regard to a fire investigation. Id. at 12, 471 A.2d 1209. We stated that:
The qualified privilege to report defamatory words or statements uttered by a public official with respect to matters within the scope of his official responsibility is analogous to the privilege afforded the news media with respect to full, fair and accurate reports of judicial, legislative and other public proceedings.
[193 N.J. Super. at 20, 471 A.2d 1209 (citations omitted) (emphasis added).]
Thus, we held that a privilege, analogous to the fair reporting privilege, applies to news coverage of public officials' statements to reporters pertaining to matters within the scope of their official duties. Ibid. See Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1085, 1087 n. 28 (3d Cir.1988).
The privilege is founded on the public's interest in learning of important matters. Medico, supra, 643 F.2d at 141 (quoting Cowley v. Pulsifer, 137 Mass. 392, (1884), Holmes, J.). This privilege exists both to examine the affairs of government officials, and to provide the public with information regarding matters of legitimate public concern. Ibid. Courts have recognized the importance of permitting the news media to report on issues of important public interest without the fear of being held to have adopted the defamatory charge of another. See DiSalle v. P.G. Pub. Co., 375 Pa.Super. 510, 544 A.2d 1345, 1362 (1988), appeal denied, 521 Pa. 620, 557 A.2d 724 (1989) (noting that the republication of false charges by a public official against another "gives the electorate a valuable insight into the character" of the accuser); *453 Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1097 (4th Cir.1993) (Where a legislator made defamatory charge against plaintiffs, it was newsworthy that the charge was made).
As noted in Coleman v. Newark Morning Ledger Co., supra:
The rule of conditional or qualified privilege, whereby a person is protected from legal liability for defamatory words in fact untrue, if uttered honestly and without any indirect or improper motive, is founded on the general welfare of society and so new occasions for its application will necessarily arise with continually changing conditions ... The policy is an accommodation of competing social and political interests for the good of all: the protection of the reputation of individuals, on the one hand, and on the other the collective security and the "interest of the public in the fullest freedom of officials to make disclosures on matters within the scope of their public duties * * *."
[29 N.J. at 376, 149 A.2d 193 (citations omitted).]
We find good reason for extending to these appellants a qualified privilege to the printing of those accusations made by Goldberg during non-public interviews. See Molnar, supra, 193 N.J. Super. at 20, 471 A.2d 1209. The various plaintiffs involved are clearly public officials. Costello v. Ocean County Observer, supra, 136 N.J. at 612-14, 643 A.2d 1012. The fair report privilege afforded the news media must extend to full, fair and accurate reports of what was said concerning conditions and situations existing in government which affect the public, where such persons are involved. The public interest in the affairs of government needs to be paramount. See Fees, supra, 105 N.J. at 336, 521 A.2d 824.
In their certification filed in opposition to the Motion to Dismiss, plaintiffs certified that Councilmember Goldberg had been making the same allegations reported in the article since April 1991, including at an official city council session in June 1991. We see no reason to deny the fair report protection to the media where the remarks reported in the article were made in an interview reasonably related to the public disclosure or public controversy. The overriding importance of the public interest in the thorough reporting and evaluation of the charges or dispute compels the protection of the publication even at the expense of the public officials' personal reputations. The statements were those of a *454 public official and were made regarding the police department and police officials. The media republication of those statements was in the context of the disruption that the charges were causing to the operation of the local government. The public's interest in obtaining knowledge of the effectiveness of its government compels us to conclude that a qualified fair report privilege applies to the article.
For the fair report privilege to protect defamatory statements contained in a newspaper article, the court must also determine whether the report is a full, fair and accurate account. Costello v. Ocean County Observer, supra, 136 N.J. at 607, 643 A.2d 1012. It is not necessary that the account be exact in every detail, so long as it conveys to the persons who read it a substantially correct account. Restatement (Second) of Torts, § 611, comment f; see also Costello, supra, 136 N.J. at 607, 643 A.2d 1012 (quoting the Restatement (Second) of Torts). In the present case, there is no assertion that the reporting lacks the qualities of fairness and accuracy. Indeed, an unbiased reading of the article reveals such an exposition of the lack of validity to Goldberg's assertions that plaintiffs offer it as proof of appellants' malice and knowledge of the falsity of the charges.
It is apparent from the pleadings and plaintiffs' own certification that appellants published a fair and accurate account of the statements made by Goldberg and the context in which they were made. The article is filled with exculpatory language to maintain the fairness of repeating the allegations of criminal activity made by Goldberg. Language throughout the article reveals that the accusations made by Goldberg and his political faction appeared to lack substance and defy confirmation. The article made the point that
Feeding the discord are persistent  and unsubstantiated  allegations of wrongdoing by high-level police officials. The allegations have ripped apart a Democratic Party that has long controlled public policy in Fort Lee.

*455 The merit of those allegations, however, has taken a back seat to the political infighting among the borough's elected leaders, split between those who favor the critics and those who support the department's leaders.
* * * * * * * *
None of the charges could be substantiated by The Record.
Orso and other top-ranking police officials vehemently deny the allegations and say they even offered the FBI access to all public and private police records  an offer the agency declined.
Bergen County Prosecutor John J. Fahy says he knows of no improprieties involving the Fort Lee force. And in an unusual public statement last December, New Jersey FBI chief James Esposito said there was no substance to allegations against Orso and his aides.
Viewed in its entire context, it is clear the article is not misleading, confusing or internally inconsistent. See Costello v. Ocean County Observer, supra, 136 N.J. at 615, 643 A.2d 1012. Reasonable persons cannot dispute that the article presents both sides of the controversy, fairly and accurately, in order to inform the public of circumstances reasonably construed to be interfering with the orderly administration of local government. The central focus of the article was precisely the political factioning in Fort Lee and its impact on its government.
Plaintiffs maintain that even if the fair report privilege applies to the report of Goldberg's statements, the fair report privilege is defeated because appellants knew of the falsity of the charges after conducting their own investigation. We find the privilege is not defeated by appellants' conduct in this case.
According to the Restatement, a showing that appellants knew of or acted in reckless disregard of the falsity of the statements is insufficient to find the privilege defeated. The Restatement (Second) of Torts, § 600 sets forth:
Except as stated in § 602, one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he
(a) knows the matter to be false, or
(b) acts in reckless disregard to its truth or falsity.
Comment (c) to § 600, however, specifically excludes the fair report privilege from this standard. Under comment (a) to § 611, *456 it is the Restatement position that the fair report privilege exists even though the publisher does not believe the defamatory words reported and even when the publisher knows them to be false. Restatement (Second) of Torts, § 611, comment a. According to the Restatement, abuse of the privilege takes place only when the publisher does not give a fair and accurate report of the proceedings. Ibid.; Cf. Molnar v. Star Ledger, supra, 193 N.J. Super. at 21, 471 A.2d 1209.
In Coleman, supra, our Supreme Court engaged in a lengthy discussion of "malice," and stated that "the court will look to the primary motive or purpose by which the defendant apparently is inspired" and that "the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection." 29 N.J. at 375, 149 A.2d 193 (internal quotations omitted). Quoting the Restatement (First) of Torts, § 611, the Coleman court noted that "... the privilege is `lost if the report is published solely for the purpose of defaming the other and not for the purpose of informing the public,' and the privilege `differs from the usual conditional privilege in that it affords protection even though the defamatory statement reported is known to be false.'" Coleman, supra, 29 N.J. at 379, 149 A.2d 193 (citations omitted).
In Dairy Stores v. Sentinel Pub. Co., 104 N.J. 125, 516 A.2d 220 (1986), the Supreme Court recognized that
"Malice" adds nothing to the legal analysis of an allegedly defamatory statement, and it can become a pitfall in the underbrush of common law. Consequently, we lose nothing by striking "malice" from the vocabulary of the common law of defamation. Indeed, the Restatement eschews the term altogether, speaking instead of the "abuse of privilege." ... It is more direct to recognize the legal consequences of the publication of certain statements without recourse to so ambiguous a word with such a checkered past.
[citations omitted.]
Nonetheless, the court in Dairy Stores, supra, stated:
Although we discard the label, we adhere to the principle that to overcome a qualified or conditional privilege, a plaintiff must establish that the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity.
[104 N.J. at 151, 516 A.2d 220.]
*457 For purposes of the present case, we need not resolve the conflict between the holding in Dairy Stores that knowledge of falsity or reckless disregard will defeat a qualified privilege, and the court's reference to § 600 of the Restatement (Second) of Torts, which, as previously discussed, excepts the fair report privilege from the rest of the qualified privileges. See Fees v. Trow, supra, 105 N.J. 330, 521 A.2d 824; Schiavone, supra, 847 F.2d at 1087, n. 28.
We are satisfied that on the undisputed facts in the present case, even applying a standard of actual malice, plaintiffs are unable to demonstrate that appellants acted improperly or abused their privilege in printing the article. Plaintiffs' argument is that appellants conducted an investigation of the allegations through police documents and records, as well as by interviewing plaintiffs, and therefore appellants knew that the allegations were false.
Justice Garibaldi in Cosiello v. Ocean County Observer, supra, pronounced:
To survive summary judgment, a public official must prove that the statements were published either with knowledge that they were false or with reckless disregard of whether they were false. [New York Times v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964)]. To determine whether a genuine issue of material fact exists regarding actual malice, a court must consider whether the plaintiff has produced the "quantum and quality of proof" necessary under the New York Times v. Sullivan standard. Schiavone, supra, 847 F.2d at 1089. The plaintiff must demonstrate that a reasonable jury could conclude that "clear and convincing evidence" exists that the defendants published the article with actual malice. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 215-16 (1986).
[136 N.J. at 614, 643 A.2d 1012.]
The justice further expounded:
Plaintiffs nonetheless must produce substantial evidence to survive a motion for summary judgment. Although courts construe the evidence in the light most favorable to the non-moving party in a summary judgment motion, the "clear and convincing" standard in defamation action adds an additional weight to the plaintiffs' usual "preponderance of the evidence" burden.
[Id. at 615, 643 A.2d 1012 (citations omitted).]
*458 We are convinced that considering the facts as alleged, in the light most favorable to plaintiffs, a reasonable fact finder could not find "clear and convincing" evidence of appellants' actual malice. There is no indication in the pleadings or certification of plaintiffs that appellants ignored any available information concerning the charges and allegations, or that they were less than thorough in reporting their inability to verify or confirm the assertions. The context of the article when viewed in its entirety reflects not actual malice and/or negligence, but rather full and fair media exposition of a matter of obvious public interest and importance. See id. at 619, 643 A.2d 1012.
We are convinced that discovery would have served no useful purpose in this case. As stated in Maressa v. New Jersey Monthly:
Aside from the danger of a libel judgment and the intrusiveness of discovery of sources and editorial process, the cost of defending a libel action can itself deter free press.... The desultory pace of [litigation] gives little comfort to those who would assert their constitutional right to free speech about public affairs.... Our courts should resolve free speech litigation more expeditiously whenever possible. The perpetuation of meritless actions, with their attendant costs, chills the exercise of press freedom. To avoid this, trial courts should not hesitate to use summary judgment procedures to bring such actions to a speedy end.
[89 N.J. 176, 196, 445 A.2d 376, cert. den., 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 169 (1982) (citations omitted).]
In Kotlikoff v. The Community News, our Supreme Court also stated that the threat of prolonged litigation has a real potential for chilling journalistic criticism and comment upon public figures and affairs. 89 N.J. 62, 67, 444 A.2d 1086 (1982).
The summary judgment device, as employed by the trial court here in the prediscovery stage, winnows out nonactionable claims, avoids the expenditure of unnecessary legal fees, and discourages frivolous suits. We therefore encourage trial courts to give particularly careful consideration to identifying appropriate cases for summary judgment disposition in this area of the law.
[Id. at 67-68, 444 A.2d 1086 (citations omitted).]
In conclusion, we add that appellants having acted reasonably and in the public interest concerning a matter involving public officials, summary judgment should have been granted. See and compare Stockton Newspapers Inc. v. San Joaquin Superior *459 Court, 206 Cal. App.3d 966, 254 Cal. Rptr., 389, 398 (1988) (protection of the interest of the public in learning of misconduct of a public official makes it reasonable for a newspaper to publish []claims of misconduct despite the absence of belief that [the] version of the misconduct is true).
The order denying summary judgment is reversed. The matter is remanded for entry of an appropriate order for summary judgment as to the media defendants.