722 A.2d 568 (1999)
317 N.J. Super. 439
William W. FORTENBAUGH, Plaintiff-Appellant,
v.
NEW JERSEY PRESS, INC., and Morton R. Rabinowitz, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1998.
Decided January 22, 1999.
*570 George W.C. McCarter, Shrewsbury, for plaintiff-appellant (McCarter & Higgins, attorneys; Mr. McCarter, on the brief).
Thomas J. Cafferty, Somerset, for defendant-respondent New Jersey Press, Inc. (McGimpsey & Cafferty, attorneys; Mr. Cafferty and Arlene M. Turinchak, on the brief).
Leon Friedman of the New York bar, admitted pro hac vice, for defendant-respondent Morton R. Rabinowitz (Ball Livingston and Mr. Friedman, attorneys; Stuart S. Ball, Nutley, of counsel and on the brief).
Before Judges KING, WALLACE and NEWMAN.
*569 The opinion of the court was delivered by KING, P.J.A.D.

I
In an "op-ed" column in the "Homes News & Tribune" Morton R. Rabinowitz stated that in an unidentified court proceeding documents revealed plaintiff, William P. Fortenbaugh, *571 a Rutgers professor, had been accused of masturbating at a faculty meeting. Fortenbaugh brought this suit for defamation. He conceded that he had been so accused but he denied that the accusation was true. He claimed the op-ed article was an unfair report.
The Law Division judge granted summary judgment to defendants, the op-ed author, Rabinowitz, and the publisher of the "Home News & Tribune," New Jersey Press, Inc. The judge found that the alleged defamation (1) was protected by the privilege of fair reporting of judicial proceedings, and was (2) truethat plaintiff had been accused of masturbating.
We reverse on both grounds and remand for further proceedings. We conclude (1) that the privilege did not apply because the op-ed article was not a fair or accurate account of a judicial proceeding and (2) the defense of truth did not apply because the relevant "truth" was the underlying conductwhether plaintiff actually masturbated at the faculty meetingnot whether he was accused of doing so.

II
On February 15, 1996 the "Home News & Tribune" published a "COMMENTARY" by Rabinowitz, who was not an employee of the newspaper, and was identified in the article only as a "resident of North Brunswick." Bearing the headline, "RU SWEEPS HARASSMENT UNDER THE RUG," Rabinowitz's article purported to comment on the newspaper's earlier report that Professor Fortenbaugh had been reprimanded and ordered to undergo counselling after "numerous complaints of sexual harassment were sustained against him."
In the part of the article alleged as defamatory, Rabinowitz wrote:
Reprimand notwithstanding, Fortenbaugh's conduct apparently continued. As revealed in recently unsealed court papers, this fact was brought to the attention of the Rutgers administration when his department chairman reported that the professor had allegedly masturbated during a faculty meeting. No sanctions were imposed for this offense.
Rabinowitz's article described other incidents involving plaintiff and other Rutgers faculty, all of which he claimed were handled improperly by the University.
In his deposition in this action Rabinowitz revealed that the article had originated as a letter to the editor originally written by Joseph San Filippo, a Rutgers professor who had been fired for misconduct and who had filed an unsuccessful wrongful discharge suit against Rutgers. Rabinowitz submitted the letter under his own name because San Filippo "felt that if he signed the letter, they wouldn't print it." Rabinowitz said he did not know that the letter would be published in the format of an "op ed column," rather than as a letter to the editor.
Rabinowitz also testified by deposition that he had satisfied himself that the facts concerning plaintiff were true by examining some "court records" which San Filippo showed him from his unsuccessful suit against Rutgers. One of those "records" was the deposition of Jean Ambrose, Assistant Vice President for Faculty Affairs, who said that she had heard the rumor that a professor, designated in the San Filippo case as Professor LFF or FF, once had masturbated in front of other faculty members. Rabinowitz had also examined the deposition, in the San Filippo case, of Elizabeth Mitchell, another Rutgers administrator, who testified that a department chairperson had reported to her that a "tenured faculty member had masturbated in front of his faculty colleagues at a faculty meeting."
Rabinowitz had also seen a March 29, 1994 letter, produced as an exhibit in the San Filippo matter, in which Rutgers responded to a sexual harassment claim against a professor, designated at the top of the letter by the code letters FF. While the name of the accused professor was blocked out several times, in one instance it was not; this oversight revealed that plaintiff was the professor under sexual harassment suspicion. Plaintiff properly observes this was caused by "careless redacting."
The harassment claim discussed in the letter bore absolutely no relationship to the *572 alleged masturbation incident. Rabinowitz had deduced that plaintiff was the FF referenced by Jean Ambrose because that was the code designation which appeared at the top of the March 29, 1994 letter, in which plaintiff was identified by name, albeit accidentally.
In their depositions for the present case, both Mitchell and Ambrose testified that plaintiff was the subject of the masturbation accusation. At oral argument plaintiff's counsel conceded this point, while denying that the accusation was true. Elizabeth Mitchell testified she believed that the masturbation incident allegedly occurred in the mid-1980's.

III
In November 1996 plaintiff filed this complaint seeking damages for the allegedly libelous "op-ed" article which reported he had been accused of masturbating during a faculty meeting. In addition to two counts in defamation, the complaint stated counts for negligence and intentional infliction of emotional harm. The original defendants were the owner and publisher of the newspaper (Asbury Park Press), the author of the article (Rabinowitz), and the unidentified department head who first uttered the accusation against plaintiff (John or Jane Doe). The named defendants filed separate answers denying the key allegations and asserting various defenses, including truth and the privilege to report on judicial proceedings.
Plaintiff replaced Asbury Park Press with its successor, New Jersey Press, Inc., as a defendant. The judge denied plaintiff's motion to substitute Anna S. Benjamin for the fictitiously-named defendant because she allegedly made the statement about ten years earlier or well beyond the statute of limitations.
After discovery, both defendants moved for summary judgment. The Law Division judge rendered an oral opinion granting summary judgment to both defendants on alternative grounds: (1) the alleged libel was a fair report of statements made during a judicial proceeding; and (2) the protested statement was true.

IV
Plaintiff contends that the motion judge erroneously exonerated defendants under the defense of the qualified privilege to fairly report on judicial proceedings. That privilege cannot apply here, plaintiff contends, because the protected portion of the article was not fair and accurate and defendants were motivated by ill will. The defendants reply that the privilege applies because the article accurately stated that court records showed a department head had accused plaintiff of masturbating during a faculty meeting. Defendants deny any malicious motives.
The motion judge correctly found there was no dispute that plaintiff was the person referred to in the San Filippo case as having been accused of masturbating at a faculty meeting. Indeed, counsel for plaintiff conceded this fact. He had to concede this after Mitchell and Ambrose so testified at depositions. But plaintiff's counsel did and continues to deny the substance of the accusation, i.e., that plaintiff in fact did masturbate at a faculty meeting. The defendants do not appear to claim that the allegation was true, but only that it was made.
Hence the judge ruled "that the newspaper and Mr. Rabinowitz are entitled to summary judgment on the basis of the fair report of judicial proceedings and the [defense of] truth supplementary to that, since there is no issue of fact with regard to the identity of the individual who was claimed to have been involved in this act." The judge disagreed with plaintiff that defendants had to demonstrate the truth of the underlying conduct that plaintiff actually masturbated at the meetingas opposed to the truth of the statement which the records in the San Filippo case disclosed, that plaintiff had been accused of masturbating. The judge also reasoned that Rabinowitz was privileged to report what his own investigation revealed, namely, that the person identified in court by the code letters LFF or FF was really plaintiff: "He's entitled to report what happened in the proceeding. And he's also entitled to figure out who the person was. And if he's right about who it is, then it's truth."
*573 Defendants do not dispute that the imputation of masturbating at a faculty meeting was defamatory. But defendants assert: "The fair-report privilege is an exception to the general rule that imposes liability for republication of a defamatory statement." Costello v. Ocean County Observer, 136 N.J. 594, 606, 643 A.2d 1012 (1994). The privilege permits publication of defamatory matter uttered in judicial and other public proceedings. Id. at 607, 643 A.2d 1012; Orso v. Goldberg, 284 N.J.Super. 446, 451, 665 A.2d 786 (App.Div.1995). Its purpose is to assure the public interest in knowing what takes place in official proceedings. The underlying rationale is that members of the public, had they been present, would have seen and heard the same statements which were reported; the publisher is merely an interlocutor to the public at large. Costello, 136 N.J. at 607, 643 A.2d 1012.
The privilege is summarized in the Restatement (Second) of Torts § 611 (1977):
The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.
For a report of judicial proceedings to be protected by this privilege, it must be full, fair, and accurate. Costello, 136 N.J. at 607, 643 A.2d 1012; Orso, 284 N.J.Super. at 454, 665 A.2d 786. The test for fairness and accuracy is an objective one. Costello, 136 N.J. at 607, 643 A.2d 1012. "It is not necessary that the account be exact in every detail, so long as it conveys to the persons who read it a substantially correct account." Orso, 284 N.J.Super. at 454, 665 A.2d 786. Accord, Restatement (Second) of Torts, § 611 comment f. While errors and omissions are not necessarily fatal, the privilege is defeated if those errors and omissions, read objectively, tend to mislead readers. Costello, 136 N.J. at 608, 643 A.2d 1012; see Sedore v. Recorder Pub. Co., 315 N.J.Super. 137, 156, 716 A.2d 1196 (App.Div.1998).
Even if the report is facially accurate, it might not be fair if edited or abridged in a misleading manner. Costello, 136 N.J. at 608, 643 A.2d 1012. Thus, though the report need not be exhaustive,
it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it, as for example a report of the discreditable testimony in a judicial proceeding and a failure to publish the exculpatory evidence, or the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article. The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.

[Restatement (Second) of Torts § 611 comment f.]
A report may not be "fair" if it fails to reveal the ultimate outcome of the reported accusation. For example, in Reilly v. Gillen, 176 N.J.Super. 321, 423 A.2d 311 (App.Div. 1980), during a 1977 municipal election defendant mailed to voters a copy of a 1954 article reporting that a civil action alleging public corruption had been filed against plaintiff, a candidate in the election. The mailing did not reveal the complaint was later dismissed and plaintiff exonerated. We upheld the trial judge's rejection of defendant's fair-report privilege defense, ruling that the accuracy and fairness of a report must be assessed as of the time of publication, not the time of the original proceeding: "an article true when published may nevertheless be libelous if knowingly republished without reference to intervening events establishing that the factual allegations originally recounted were false." Id. at 327, 423 A.2d 311. We there reasoned:
In 1977 the 23-year-old article was not "fair and accurate" because of Gillen's failure to report the ultimate disposition of the charge. As republished, the article's unmistakable import was that plaintiff was guilty of wrongdoing, an insinuation which lay beyond the privilege whether we call it a false statement or a distorted account. *574 Thus "the jury was properly permitted to assess the truth thereof in light of the facts as they were known at the time of republication." Id. at 328, 423 A.2d 311.
Plaintiff in the case now before us stresses the following ways in which Rabinowitz's article in the "Home News" was inaccurate and unfair:
There were no "unsealed" court records. Nowhere in the San Filippo litigation was Professor Fortenbaugh's name associated with the "masturbation" rumor. No "offense" by Professor Fortenbaugh was "revealed" in the course of the San Filippo judicial proceedings, nor was there any suggestion that he improperly evaded "sanctions" as implied by the article.
Defendant publisher argues that whether the records were "unsealed" is unimportant to the "gist" or "sting" of the alleged defamation, which is that plaintiff masturbated at a faculty meeting. Nonetheless, defendant Rabinowitz invokes the affidavit by Joseph San Filippo, filed in support of Rabinowitz's summary judgment motion, which clarifies the extent to which the San Filippo records were originally confidential. San Filippo testified by deposition that, in response to his discovery demand, Rutgers provided documentation on charges against other professors, the names of whom were redacted. The crucial letter accidentally revealing plaintiff's unredacted name on one occasion was one of those documents. According to San Filippo, "the documents were subject to a confidentiality order entered into by the court so that the documents could not be made public." At trial of the San Filippo matter, says San Filippo, the judge "issued an order permitting us to introduce those exhibits, vacating the confidentiality order and unsealing the documents with respect to exhibits that we would introduce at the trial." Thus the statement that the records were "unsealed" is not itself inaccurate or misleading.
More substantial, however, is plaintiff's complaint about the article naming him as the subject of the public masturbation complaint. For the reasons which follow, we agree with plaintiff that the protested excerpt in the article was both inaccurate and unfair to him.
First, the excerpt's chronology is misleading, to plaintiff's detriment. Beyond dispute, the alleged masturbation incident purportedly occurred at least ten years before publication of the 1996 article. The article referred to plaintiff's reprimand for alleged sexual harassment with respect to a junior female faculty member. This incident occurred sometime in 1989, according to the March 29, 1994 letter; the complaint about it was made in January 1990. The clear but incorrect implication of the Rabinowitz "Home News" article was that plaintiff masturbated at a faculty meeting after he was reprimanded for this conduct in 1989.
Second, in referring to the facts revealed in "court papers," the excerpt did not specify the nature of that court action. A reasonable implication was that plaintiff himself was the charged party in a judicial proceeding as a result of the masturbation incident, perhaps even in a criminal case. Nothing in the passage conveyed the fact that the sexual harassment allegation against plaintiff arose from a complaint of a verbal sex-discrimination involving a junior faculty member in 1989, which brought only a written administrative rebuke as a sanction.
Third, in stating that plaintiff was not sanctioned by Rutgers for this "offense," the excerpt implied that plaintiff had been found guilty (if a criminal case) or liable (if a civil case) of public masturbation. Rabinowitz's article neglected to state that the masturbation charge had neither ever been sustained nor indeed ever formalized into a disciplinary, civil, or criminal complaint.
Under the doctrine expressed in Reilly v. Gillen, 176 N.J.Super. at 327, 423 A.2d 311, the article unfairly and inaccurately insinuated that plaintiff had been adjudicated "guilty of wrongdoing." That it correctly reported plaintiff had been accused was not enough to cloak defendants in the fair-report privilege. Defendants were obligated to flesh out the report to reflect the true nature of the accusation referred to and its ultimate conclusion.
The judge ruled that a publisher should be permitted to perform its own investigation in *575 order to uncover persons whose identities were intended to be kept secret in a judicial proceeding. However, the publisher loses the benefit of the fair-report privilege in this circumstance. True, anyone who examined the code letters used in the San Filippo case to denote plaintiff (FF) could have looked at the FF at the top of the poorly redacted letter of March 29, 1994 and deduced that FF was Fortenbaugh, the plaintiff here. But that fortuity only occurred because someone unknown carelessly failed to block out plaintiff's name in one place in that letter. As set out in San Filippo's affidavit, the intent of the court was to keep the names of FF and the other professors confidential. The public policy favoring confidentiality of such matters is thwarted if a third-party, through detective work and educated guessing, could use court-intended confidential information as the basis for a privilege to defame the person whose identity properly was concealed by judicial decree.
We add several comments respecting sealed records. Dean Prosser says that "sealed records and documents withheld from the public eye under court order" lie outside the fair-report privilege. Prosser and Keeton on Torts § 115 at 837 (5th ed.1984). Though plaintiff's name in the March 29, 1994 letter was open to the public eye, this was only by mistake. The Prosser and Keeton principle should apply to this circumstance as well, otherwise the salutary effects of keeping some evidence confidential is negated. Moreover, the public policy underlying the fair-report privilege is to foster the public's awareness of what actually happens at public proceedings. Costello, 136 N.J. at 607, 643 A.2d 1012. That policy necessarily must yield in cases where, as in San Filippo, a court has decided that certain sensitive but gossipy matters should remain confidential in order to properly protect reputation.
Courts have also held that the fair-report privilege does not extend to matters discovered during the publisher's "extra-judicial investigation." Purcell v. Westinghouse, 411 Pa. 167, 191 A.2d 662, 668 (Pa.1963). Nor does the privilege include "a reporter's inferences drawn from the public record." Dawson v. New York Life Ins. Co., 932 F.Supp. 1509, 1532 (N.D.Ill.1996), aff'd 135 F.3d 1158 (7th Cir.1998).
Since we conclude that the privilege never attached in this case, we need not rule whether the privilege was lost by virtue of malice on the part of defendants. We observe briefly that the kind of malice needed to defeat the fair-report privilege is vigorously debated by the parties and is unsettled in New Jersey. Plaintiff insists that malice means ill will while defendants claim that the correct standard is the "constitutional malice" test: knowledge that the statement was false or in reckless disregard of its truth or falsity. In Orso, 284 N.J.Super. at 455-57, 665 A.2d 786, we reviewed the conflicting standards of malice and declined to resolve the conflict; resolution was unnecessary because of our finding that the fair-report privilege was not abused in that case under any standard. Because we have concluded that the conditions of the privilege were not established here, we need not decide the question of whether the privilege was abused.

V
We turn to the defense of truth. Plaintiff contends that the judge wrongly credited defendants' truth defense. Both defendants raised truth as a separate defense, in addition to the defense of the fair-report privilege. The judge did not analytically separate the two; he referred to the truth defense as "supplementary" to his main ruling that the fair-report privilege applied. The judge seemed to say that because it was true plaintiff was the person accused of having masturbated, the article was "accurate" and protected by the fair-report privilege. Nonetheless, his opinion is susceptible of plaintiff's interpretation that, in addition to treating truth as an element of the privilege, the judge also held truth was an independent defense.
The issue is whether a defendant who publishes a statement to the effect that a third party made a defamatory statement about plaintiff may escape liability by showing it was true that the third party made that statement. This is the defendants' position, and this is what the Law Division judge *576 ruled. But plaintiff contends that it is the truth of the underlying conduct which must be shown, i.e., not only that a department chair accused plaintiff of publicly masturbating but that plaintiff in fact did so masturbate.
Though there is no New Jersey case holding either way on this point, our Supreme Court has approved plaintiff's view in dicta:
There is considerable authority for the proposition that the fact that defendants accurately reported information obtained from another source will not relieve them of liability. Under that analysis the defense of truth does not refer to the truthful republication of a defamatory statement but to the truth of the statement's contents. Restatement (Second) of Torts § 578, comment b, at 235-36 (1977). Thus, if defendant published that a third person stated that plaintiff has committed a crime, it is no justification that the third party did in fact make that statement. Rogers [v. Courier Post Co.], supra, 2 N.J. [393] at 401-02 [66 A.2d 869 (1949)]. Defendant must prove that in fact plaintiff committed the crime. See L. Eldridge, Law of Defamation § 67 at 331 (1978).
[Lawrence v. Bauer Pub. & Print. Ltd., 89 N.J. 451, 461, 446 A.2d 469, cert. denied, 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 395 (1982).]
The Court's dicta is consistent with the comment to the Restatement's section on the truth defense:
e. It is necessary to find that the defamatory matter contained in the statement is true. When one person repeats a defamatory statement that he attributes to some other person, it is not enough for the person who repeats it to show that the statement was made by the other person. The truth of the defamatory charges that he has thus repeated is what is to be established.

[Restatement (Second) of Torts, supra, § 581A comment e.]
See also Prosser and Keeton on Torts, supra, § 116 at 841 ("If the defendant repeats the defamation as reported by another, it will not be enough to prove the fact of the report, without proving the truth of the imputation reported"). Defendants present no counter-authority, resting on their insistence that the only pertinent truth is the statement that plaintiff was the person who was the subject of the allegation.
We agree with plaintiff. The truth defense would excuse too much if a defendant could be immunized by the fact that its defamatory statement was first uttered by someone else, as the Court in Lawrence recognized. Such a defendant can still escape liability under the fair-report privilege, if its requisite elements are otherwise met, but they are not met here. A defendant cannot escape responsibility just because the alleged defamation was first uttered by another, perhaps an unreliable gossip. To the extent the judge applied the truth defense as a separate theory for absolving defendants, this was error.

VI
Plaintiff next argues that defendants were not entitled to the protection of the heightened standard of fault governing alleged defamation of public officials, namely, the "actual malice" standard derived from New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Both defendants asserted the so-called "constitutional privilege" as defenses. In light of his holding that the article was either privileged or true, however, the judge did not need to reach the fault issue, which is cognizable only if no defenses to the defamation apply. Costello, 136 N.J. at 612, 643 A.2d 1012. Under the governing fault standards, "a plaintiff can prevail by showing either negligence, if the plaintiff is a private figure, or actual malice, if the defendant is a public figure." Ibid. We have concluded that the judge erred in accepting the privilege and truth defenses. Thus we must consider the question of fault.
The parties concede that the judge did not resolve this "public figure" question. When counsel for Rabinowitz argued that plaintiff was a public official, and that plaintiff could not prove the requisite "actual malice," the judge expressed that plaintiff was "[p]robably not" a public official, adding: "But I don't know that it matters." The judge disposed *577 of the case on the privilege and truth defenses, speaking of malice only in the context of whether the fair-report privilege was defeated.
No New Jersey case has considered whether college professors are public officials or public figures for purposes of the New York Times "actual malice" test. Elsewhere, there are cases on both sides of the question; plaintiff cites the ones favoring him while Rabinowitz cites contrary cases. See generally Danny R. Veilleux, Annotation, Who is "Public Official" for Purposes of Defamation Action, 44 A.L.R.5th 193, 336-342 (1996); Tracy A. Bateman, Annotation, Who is "Public Figure" for Purposes of Defamation Action, 19 A.L.R.5th 1, 185-87 (1994).
The result in any particular case is fact-sensitive, turning on the particular duties and status of the professor in issue. Those who have significant discretionary power over matters of public interest, or have become involved in public controversies, are more likely to be deemed public officials or figures than those who have relatively low profiles. Compare Grossman v. Smart, 807 F.Supp. 1404, 1408 (C.D.Ill.1992) (professors who had high-level decisionmaking authority in public university were "public officials"), with Staheli v. Smith, 548 So.2d 1299, 1304 (Miss.1989) (public-university professor had no high-level decisionmaking authority, and he had not become involved in a controversy of public interest). "Whether a person is a public official or a public figure is a mixed question of fact and law to be determined by the trial court." Southall v. Little Rock Newspapers, 332 Ark. 123, 964 S.W.2d 187, 191 (Ark.1998).
Rabinowitz argues that plaintiff was a "public official" because (1) he was a professor at a state university, (2) he acted as chairperson of the Classics Department from 1987 to 1990, and (3) as he alleged in his complaint, he had "earned a national and international reputation as a teacher, scholar, and expert on ancient Greek literature and philosophy." Rabinowitz also alleges, without citation to the record, that plaintiff had "discretionary administrative power within the University." Plaintiff in turn denies that he had any of the characteristics required to trigger "public" status.
On the present record, we can not fairly decide this issue. The trial-level judge will be in a much better position to resolve the issue, whether on the existing record after briefing and argument and perhaps after pertinent further discovery and factual presentation. See Hill v. Evening News, 314 N.J.Super. 545, 559-60, 715 A.2d 999 (App. Div.1998).

VII
Plaintiff next contends that the judge should not have dismissed counts three and four. Count three alleged that defendants were negligent in failing to take steps to ascertain the truth of the article's allegations. Count four alleged that defendants' defamation constituted the tort of outrage or intentional infliction of emotional harm. The judge did not mention counts three and four in his oral opinion. Plaintiff wrote to him requesting a ruling but the judge entered an order for summary judgment, dismissing the entire complaint, without separately addressing counts three and four.
Grounded as they were in the same conduct alleged in the defamation counts, counts three and four logically would fall if the others do. See Salek v. Passaic Collegiate School, 255 N.J.Super. 355, 361, 605 A.2d 276 (App.Div.1992) (trial court properly dismissed claims of intentional or negligent infliction of emotional distress, which claims paralleled the dismissed claim of defamation); Bainhauer v. Manoukian, 215 N.J.Super. 9, 48, 520 A.2d 1154 (App.Div.1987) (malicious-interference-with-employment count was predicated on the same facts alleged in the defamation count and could survive only if the defamation count did). Because we have ruled that the defamation action survives the summary judgment motion, the derivative claims also survive that motion.
Reversed and remanded.