THOMAS W. WATSON, Plaintiff-Appellant, *v.* SOUTHWEST MESSENGER PRESS, INC. *et al.*, Defendants-Appellees.

(No. 56891;

First District (1st Division)—June 18, 1973.

Kreger and Karton, of Chicago, for appellant.

William Marosco, of Chicago, (Alphonse Cerza, of counsel,) for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Thomas W. Watson (plaintiff) brought action for libel against Southwest Messenger Press Inc., a local newspaper and Walter Lysen and Elmer Lysen, two persons associated with it (defendants). The trial court entered summary judgment in favor of defendants. Plaintiff appeals.

In this court, plaintiff contends solely that the trial court erred in entering summary judgment because the pleadings show the existence of a triable issue of fact. Defendants contend that the summary judgment in their favor was properly entered because the plaintiff has failed to support the conclusion that defendants were motivated solely by actual malice. Defendants also urge that the record shows amply that the publications by defendants were true.

Defendants' motion for summary judgment was supported by affidavits setting forth certain discovery depositions. No counter-affidavits were filed by plaintiff. We will first summarize the allegations of plaintiff's complaint, including the allegedly libelous newspaper articles, and then the material portions of the discovery depositions.

Plaintiff's amended complaint alleged that he had a good reputation in the Village of Hickory Hills and that defendants owned, published and circulated a newspaper containing two articles which falsely accused plaintiff of commission of criminal acts of official misconduct. At that time, plaintiff was Mayor of Hickory Hills. The amended complaint further alleged not only that these articles were wholly false and untrue but that they were composed and printed with actual malice; with knowledge that they were false and untrue or with reckless disregard for the truth of falsity thereof.

The first of these articles was printed May 23, 1968. The caption referred to a "ticket scandal" looming over Hickory Hills. It stated that the mayor was severely criticized by a number of residents because he had ordered a "ticket writing spree" so that police had issued 130 tickets to citizens who had parked their cars in front of their homes overnight. This was referred to as a "wholesale ticket writing project." However, none of the ticketed persons had paid fines but the major had visited all those that had received tickets and promised to void them. A reporter for the paper had been unable to find a single person who had paid a fine. Sometime later the mayor again ordered the issuance of these tickets. Several persons who found tickets on their cars said they had been

assured that "Mayor Watson will fix them." The article reported that several homeowners had protested "the Watson game of Winning Votes." They were reported as referring to the activities as a "vote getting gimmick" and a "phony issue" and also as stating, "It's nothing new in river politics."

The second article was published May 30, 1968. It stated that further developments into the ticket writing spree ordered by the mayor had added more confusions to a muddled situation. Here followed a description of the tickets as appended to various automobiles. It stated that according to reports more than 200 tickets had been issued to people who had parked in front of their own homes. The article concluded: "Police say the wholesale ticket project was ordered by Mayor Watson. So what happened?"

The affidavit of Defendant Elmer Lysen set forth that he had received a number of telephone calls from citizens complaining about tickets issued for overnight parking. He had called the chief of police who told him that the plaintiff had instructed that all cars illegally parked overnight be ticketed and that as many as 130 such tickets may have been issued. Affiant then called the city clerk's office and was told that there were no records of any tickets issued for overnight parking. He called other people who had previously complained of receiving tickets and they told him that plaintiff had picked up these tickets and told them not to worry. It appears from the depositions of plaintiff and of a city police officer that plaintiff told the chief of police to enforce all ordinances. He had received complaints from residents regarding overnight parking. As a result, plaintiff received many calls from citizens and he called upon people who had received tickets and asked their opinion about the propriety of the ordinance. He concluded that people approved and wanted the ordinance enforced. He picked up several tickets from people he visited. He recommended to the city council that the first ticket for overnight parking should be considered a warning and the second should be considered valid. No member of the council objected so that this was put into effect. Plaintiff told the police department to continue to issue tickets; and, after an initial period of education, the citations were to be considered valid. A police officer stated in his deposition that the tickets had been issued and that parking on the streets between 2:00 A.M. and 6:00 A.M. was illegal. He did not know how many of the tickets were ever processed to the court stage.

Plaintiff filed objections to the motion for summary judgment alleging that the motion and supporting material contained factual discrepancies and had other defects. Plaintiff did not file counter-affidavits.

■■ Summary judgment procedure in Illinois is established and governed by the provisions of the Civil Practice Act. (Ill. Rev. Stat.

1971, ch. 110, par. 57.) The statute provides for the entry of summary judgment where "* * * there is no genuine issue as to any material fact * * *." The purpose of this statute is, indeed, salutary. It is "* * * intended to facilitate litigation and to expedite trial procedure * *· *." (*Barkhausen v. Naugher*, 395 Ill. 562, 567, 70 N.E.2d 565.) In making this determination, the trial court can and should search the record and the motion should be denied where "* * * the court finds a genuine triable issue of material fact * * *." (*Saghin v. Romash*, 122 Ill.App.2d 473, 478, 258 N.E.2d 581.) On the other hand, the converse of the situation is also true in that where there is actually no genuine issue as to any material fact, summary judgment should be granted. (See *Gelsumino v. E. W. Bliss Co.*, 10 Ill.App.3d 604, 607, 295 N.E.2d 110.) As we would expect, affidavits in support of a motion for summary judgment must be strictly construed and must leave no question as to the right of the movant to judgment. (*Board of Education v. Green Valley Builders, Inc.*, 10 Ill.App.3d 235, 237, 293 N.E.2d 183.) Where counter-affidavits are filed, they receive a liberal construction. (*American Nat. Bank & Trust Co. v. Lembessis*, 116 Ill.App.2d 5, 10, 253 N.E.2d 126.) However, our cases have consistently held that, where a party fails to deny by an affidavit, he is deemed to have admitted the truth of the material sworn averments made in support of the motion. See *Glen View Club v. Becker*, 113 Ill.App.2d 127, 136, 251 N.E.2d 778; also *Kitzer v. Rice*, 90 Ill.App.2d 72, 79, 234 N.E.2d 115.

In the case at bar, even were we to assume that the newspaper articles are libelous per se and, therefore, actionable, we must conclude that these articles are conditionally privileged as a matter of law. There is a strong and necessary rule of law resting upon an ample foundation of state and federal constitutional guarantees of free speech and free press, that reports by a newspaper upon the activities of a municipal government or its officers are privileged, even though false and defamatory, and this privilege can be defeated only by proof that the particular publication was "motivated solely by actual malice." (See *Lulay v. Peoria Journal-Star, Inc.*, 34 Ill.2d 112, 115, 214 N.E.2d 746 and authorities therein cited.) Cases decided by American courts which support this principle are too numerous to be listed here. One of the most frequently cited authorities upon this precise point is *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710.

In this regard, we believe this appeal to be governed by the decision of the Supreme Court in *Lulay v. Peoria Journal-Star, Inc.*, 34 Ill.2d 112, 214 N.E.2d 746. There, plaintiff obtained a verdict from a jury with reference to articles which appeared in the defendant newspaper concerning activities of a city health department in plaintiff's place of business. Defendant had also made a motion for summary judg-

ment which the trial court had denied. The Supreme Court reversed this judgment. The court held that the articles in question were privileged; the privilege could be defeated only by showing that they were motivated solely by actual malice; the burden rested upon plaintiff to prove actual malice and plaintiff had this obligation both upon the motion for summary judgment and at the trial. See 34 Ill.2d at 114, 115, 116.

■■ In the case at bar, there is no showing by plaintiff of any facts which remotely tend to prove the presence of actual malice. On the contrary, it appears from a fair reading of the articles in question and from the material portions of the affidavits and depositions that the articles were written only after an attempt to ascertain the facts and in response to communications made to the defendant newspaper by residents of the city. Since this element of actual malice is entirely lacking in the record, it follows necessarily that the entry of summary judgment in favor of defendants and against plaintiff was proper.

■■ There is another independent ground raised by defendants which is also ample to support and justify the judgment appealed from. Actually, the second of the articles dated May 30, 1968, contains no libelous material whatsoever. It merely refers to a "muddled situation", recites the language used upon the traffic tickets and says very little else. The first of these articles speaks about "a ticket scandal of sorts"; speaks about the alleged promise of plaintiff to "void" the tickets and then uses the word "fix" with reference to the traffic tickets. As defendants urge, the word "fix" has many dictionary meanings. It could mean the process of repairing, mending or putting in order, or it could mean an arrangement to obtain legal immunity by social influence or even by payment of money. It could possibly be construed as being synonymous with the word "void" which is alsoo used in the article with reference to the tickets.

■■■ In a situation of this type, the law requires that we read the article as a whole and that the words used therein be given their natural and obvious meaning. Where the allegedly libelous words are capable of an innocent construction, they must be read in that manner and declared nonactionable as a matter of law. (*John v. Tribune Co.*, 24 Ill.2d 437, 442, 181 N.E.2d 105.) Other recent cases applying this rule of innocent construction in rather similar situations are *Conrad v. Logan*, 4 Ill.App.3d 981, 283 N.E.2d 54; and *Van Tuil v. Carroll*, 3 Ill.App.3d 869, 279 N.E.2d 361.

The summary judgment appealed from was, therefore, properly entered.

Judgment affirmed.

EGAN and HALLETT, JJ., concur.