AHMED M. NAGIB, M.D., Plaintiff-Appellant, *v.* NEWS-SUN *et al.*, Defendants-Appellees.

Second District    No. 77-30

Opinion filed October 12, 1978.

James M. Hurley and John M. Tierney, both of Frankel, McKay, Orlikoff, Denten & Kostner, of Chicago, for appellant.

M. R. Conzelman and John Mullen, both of Conzelman, Schultz & Snarski, of Waukegan, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff, Ahmed M. Nagib, M.D., appeals from an order of the Circuit Court of Lake County dismissing his complaint for libel for failure to state a cause of action and denying him leave to amend.

This action was commenced by plaintiff on April 15, 1976, against defendants, News-Sun, Division of Keystone Printing Service, Inc., a daily newspaper published in Lake County; Keystone Printing Service, Inc.; Richard F. Kennedy, its publisher; and Dick Kendrick, a staff writer. The complaint alleged in count I that defendants negligently published a false and defamatory news story harmful to his reputation as a physician and in count II, in which plaintiff sought punitive damages, the complaint further alleged defendants acted wilfully, maliciously and without regard for the truth of the statements published. The newspaper article to which plaintiff refers was published in the morning and evening issues of the News-Sun on April 18, 1975, and purported to be a report of a trial held in the Circuit Court of Lake County entitled *Ahmed M. Nagib, M.D. v. St. Therese Hospital, Inc.*, in which plaintiff herein had sought to invalidate and set aside his dismissal by St. Therese Hospital from its active medical staff. The decision of the trial court upholding plaintiff's dismissal by the hospital had been entered by it on April 17, 1975,[1] and the account of the court proceedings of which he complains in this case was published in the newspaper the next day as we have described.

Under the heading "Judge Upholds St. Therese's Ban of Dr. Nagib," the article reviewed the evidence in the trial, including the testimony of

---

[1] The trial court's determination in that case that Dr. Nagib had been properly dismissed from the hospital was reversed by this court in *Nagib v. St. Therese Hospital, Inc.* (1976), 41 Ill. App. 3d 970, 355 N.E.2d 211, on grounds not related to the issues we consider in the present case.

plaintiff and other witnesses called by the parties, the arguments made by the attorneys and the statement of findings made by the trial judge. In doing so it described how the hospital's committee on credentials had conducted a hearing on May 28, 1975, in which Nagib and his attorney participated, and had thereafter voted to dismiss him. The news report stated in the morning publication that, "[i]n firing Nagib, the committee cited 54 instances of alleged patient neglect, failure to complete medical charts and reports, and professional incompetence, faulty diagnosis and irregular treatment of patients." It also described specific charges of patient neglect against plaintiff, which had been considered by the credentials committee and admitted in evidence in the trial, relating to his leaving a patient after surgery before accounting for a missing sponge and failing to regularly visit other patients in the hospital. The evening publication of the article which we have described was identical except there it stated the credentials committee had considered only 3 instances of alleged irregularity on the part of plaintiff rather than 54 as stated in the morning publication.

Defendants moved to dismiss the complaint, alleging the newspaper article was an accurate, complete and fair summation of the court proceedings it described and that its publication was privileged. A copy of the record of the court proceedings which had been the source of the newspaper article, including a transcript of the proceedings of the hearing held April 17, 1975, was attached to and made a part of the motion and defendants alleged that a comparison of the facts produced in the court proceedings and reproduced in the disputed publication would demonstrate the newspaper article was an accurate and fair abridgment of those proceedings. Defendants' motion further noted the complaint did not allege facts showing actual malice on the part of defendants or facts showing special damages to plaintiff and did not state a cause of action.

In passing on the motion the trial judge considered the record of the earlier case submitted which disclosed that evidence had been received that during the period from 1970 through 1974 Dr. Nagib had his hospital privileges suspended by St. Therese more than 50 times for failure to complete medical records and that, in all, the hospital credentials committee considered approximately 190 warning and suspension letters which had been directed to Dr. Nagib citing instances of alleged patient neglect, failure to complete medical charts and records, professional incompetence, faulty diagnosis or irregular treatment of patients. After hearing, the trial court dismissed the complaint finding the newspaper article to be a fair and accurate report of the court proceedings and, therefore, privileged.

Plaintiff then sought leave to file an amended complaint which would

supplement the original allegations by setting forth that defendants had published 2 news stories, the first of which erroneously and negligently stated the credentials committee had considered 54 instances of irregularity by plaintiff before ousting him, and that the error is shown by its later publication stating only 3 such instances had been considered by the committee. The trial court denied leave to so amend indicating those allegations would not aid the sufficiency of the complaint.

Plaintiff contends he is entitled to a trial on the question of whether the news story was, in fact, a fair and accurate summation of the court proceedings. He relies upon *Troman v. Wood* (1975), 62 Ill. 2d 184, 340 N.E.2d 292, where our supreme court adopted a negligence rather than an actual malice standard for application where a private person, who was neither a public official nor a public figure, seeks damages for libel. In *Troman* the court determined that a private individual might recover for libel under a negligence theory upon proof a publication was false and that the defendant either knew it to be false, or, believing it to be true, lacked reasonable grounds for that belief. The Illinois rule evolved after the United States Supreme Court in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997, had retreated from its earlier position in *Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811, and held that the states were free to impose liability for defamation on a less stringent basis than the "actual malice" standard enunciated in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, in cases where plaintiff was a private individual and the defamatory statement in question was such that it posed an apparent substantial danger to his reputation.

■■■ The negligence standard established in *Troman*, however, has a limitation which is directly appropriate to this case. As the court stated in that case, "[o]ur holding in the present case is, of course, not intended to remove any of the absolute or qualified privileges which have heretofore been recognized in this State to the extent that the facts may warrant their application." (62 Ill. 2d 184, 198, 340 N.E.2d 292, 299.) In *Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill. 2d 112, 214 N.E.2d 746, our supreme court recognized the qualified privilege which attaches to any publication which is an accurate and complete report, or a fair abridgment, of governmental proceedings even though it may repeat matters first expressed in the earlier proceeding which, in fact, are false and defamatory. (*Watson v. Southwest Messenger Press, Inc.* (1973), 12 Ill. App. 3d 968, 299 N.E.2d 409, see *Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 150 N.E.2d 202.) Judicial proceedings conducted in open court are included within those to which the qualified privilege attaches. (*Segall v. Lindsay-Schaub Newspapers, Inc.* (1966), 68 Ill. App. 2d 209, 215 N.E.2d 295.) The privilege

is limited only in that it will not apply where the publication of governmental acts or utterances is motivated solely by actual malice, that is to say, solely for the purpose of causing harm to the person defamed. *Lulay*, 34 Ill. 2d 112, 115, 214 N.E.2d 746, 748.

When examined in the light of the qualified privilege we have discussed it is apparent count I of the complaint is fatally defective. It contains no allegations, as it must, that defendants' publication of the report of the court proceeding in which plaintiff participated was motivated by their actual malice towards plaintiff solely for the purpose of causing harm to him. Count II repeats by reference the allegations contained in count I and adds, substantially in the traditional language used when punitive damages are sought, that defendants' conduct was "wilful, wanton and malicious and performed in total disregard of the truth of the statement made."

That general statement, unsupported by any factual allegations, will not permit the conclusion to be drawn that the defendants were motivated solely by actual malice towards plaintiff in their report of the court proceedings to which he was a party (see *Suchomel v. Suburban Life Newspapers, Inc.* (1968), 40 Ill. 2d 32, 38, 240 N.E.2d 1, 4-5; *Wilson v. Hunk* (1977), 51 Ill. App. 3d 1030, 1036, 367 N.E.2d 478, 483), and the allegation that defendants acted in total disregard of the truth of the statements made would not alone, even if established by the evidence, defeat the qualified privilege we have discussed. That can only be done by allegation and proof that the publication in question was "motivated solely by actual malice." *Watson v. Southwest Messenger Press, Inc.* (1973), 12 Ill. App. 3d 968, 972, 299 N.E.2d 409, 412.

Plaintiff has not suggested either in the trial court or on appeal that the newspaper report of the court proceedings was false or inaccurate in any respect except in the number of alleged irregularities on his part to which it referred. The disparity between the morning and evening newspaper reports in that respect will not support a conclusion either was a false report of the trial. It is undisputed that the record of the trial court proceedings, from which the newspaper account was taken, discloses that evidence was introduced that the credentials committee considered 190 instances of irregular conduct attributed to plaintiff. It is apparent that both publications reporting these matters were conservative, but accurate. There were 3 such instances and there were 54 such instances; all told there were 190 such instances and clearly if both articles had used the precise figure of 190 the false statement foundation necessary to plaintiff's cause would not be present. It would indeed be an anomaly were we to hold that the figures published by defendants become actionable in libel simply because they reduced the actual number of charges considered against

plaintiff when removed by the hospital. Surely, plaintiff is not contending that he would have preferred that the precise figure of 190 had been published by defendants.

If, for example, the defendants' report of the court proceeding had been that 300 instances of irregularity on the part of plaintiff had been considered by the credentials committee, and the complaint had further alleged that such false and defamatory publication had been motivated solely by the actual malice of defendants, then a triable issue of fact would have been raised. Plaintiff did not do so here and the amendment to the complaint suggested by him, which the trial court denied, would not have aided it in stating a cause of action.

The trial court determined from the record before it that defendants' publications were fair and accurate summations of the earlier court proceedings and thus privileged. From our review of that record we conclude that it provides a sufficient basis for that determination as a matter of law. We further find that the issues of the sufficiency of the complaint and its amendment were correctly determined by the trial court pursuant to defendants' motion to dismiss. Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(i); see *Kilbane v. Sabonjian* (1976), 38 Ill. App. 3d 172, 175, 347 N.E.2d 757, 761.

In view of our conclusions, we do not reach the question argued by the parties relating to special damages. See generally *Halpern v. News-Sun Broadcasting Co.* (1977), 53 Ill. App. 3d 644, 651-53, 368 N.E.2d 1062, 1068-69.

For these reasons the judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

BOYLE and RECHENMACHER, JJ., concur.