840 A.2d 959 (2004)
366 N.J. Super. 238
Fran DARAKJIAN, Plaintiff-Respondent,
v.
James HANNA, Defendant-Respondent, and
Darius Amos, Carolyn Molyneaux, North Jersey Community Newspapers, Pascack Valley Community Life, and North Jersey Media Group, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 2003.
Decided February 5, 2004.
*961 Arlene M. Turinchak, Somerset, argued the cause for appellants (McGimpsey & Cafferty, attorneys; Ms. Turinchak, on the brief).
Robert M. Mayerovic, North Bergen, argued the cause for respondent Fran Darakjian.
No brief was filed by any other party.
Before Judges KESTIN, CUFF and WINKELSTEIN.
*960 The opinion of the court was delivered by KESTIN, P.J.A.D.
This is a defamation action by plaintiff against the person who uttered an *962 allegedly injurious statement at a public meeting and the press persons and entities who reported the meeting and published the statement. Defendant press persons and entities moved to dismiss the complaint, pursuant to R. 4:6-2(e), for failure to state a claim upon which relief could be granted. In considering such a motion, a court is obliged to accept as true the facts alleged in the complaint. See Printing Mart-Morristown v. Sharp, 116 N.J. 739, 746, 563 A.2d 31 (1989).
On October 17, 2001, defendant newspaper, Pascack Valley Community Life (the newspaper), published an article, written by defendant Darius Amos, reporting on a regular meeting of the River Vale Board of Education (board). Defendant Carolyn Molyneaux is the editor of the newspaper. The remaining entity defendants are business organizations connected with the newspaper. Defendant James Hanna is the person who uttered the statement at issue.
According to the complaint, the events that culminated with the publication of the offending article related to the September 11, 2001 attack on the World Trade Center. On September 14, a candlelight vigil occurred in River Vale in memory of all who had perished in the incident, among whom were individuals residing in River Vale and surrounding communities. On that date, before the vigil was to begin, a member of the board, Jeffrey Matfus, called the police department "to inquire as to the political nature of the [event]."
An article written by Amos and published in the newspaper on October 3, 2001, reported that plaintiff had appeared at the September 24 board meeting and had complained about the inquiry, stating she "found it insulting" that Matfus had suggested the event was political. The article reported that Matfus replied he had called the police at the request of a friend whose husband had died in the attack, after she had asked him "to clarify who had organized the event." The article also referred to a comment made by Hanna, a friend of the widow, saying that the widow had been "insulted by a comment [plaintiff] had made on September 12, making whoever organized the event significant to her."
Count one of the complaint asserts as actionably defamatory a statement made by Hanna at a subsequent meeting of the board on October 8, and Amos's report of that meeting published in the newspaper on October 17. According to the complaint, Hanna
made false and defamatory statements falsely accusing the plaintiff of being cruel and dispassionate towards the widow of a resident of River Vale who had perished in the tragedy of September 11 by falsely claiming that the plaintiff had imposed her position as wife of the mayor of River Vale to "prevent the wife of a town employee from visiting the [widow's] residence after the attack."
The complaint alleges further that Hanna's statement was reported as follows:
At the October 8 meeting, resident Jim Hanna defended Dr. Matfus, a school board trustee, saying he had called the township police department on behalf of [the widow] whose husband ... has been missing since the World Trade Center attack.
According to Hanna, Fran Darakjian tried to prevent the wife of a town employee from visiting the [widow's] residence after the attack.
The complaint goes on to allege, once again, the falsity of Hanna's statement, and to assert that it
was made by him intentionally and with malice and with full knowledge of the presence of the newspaper reporter and made solely with the intent and purpose *963 to harm the plaintiff and to falsely vilify her by falsely accusing her of using her position as wife of the mayor of the township to prevent the wife of an employee from visiting a grieving widow for the sole purpose of defaming the plaintiff.
The second count of the complaint alleges in its third paragraph that defendants Amos and Molyneaux "knew and/or reasonably should have known" that Hanna's statement "was false." That paragraph goes on to state that the publication of the statement
in the October 17, 2001 issue of the Community Life, was made with malice and with the intent to harm the plaintiff and to describe the plaintiff as a heartless, insensitive, cruel individual who would intentionally use her position as wife of the mayor of the township to prevent the wife of an employee of the township to visit a bereaved widow whose husband had perished in the tragedy of September 11 at the World Trade Center Twin Towers.
This is the only claim of actionable conduct alleged by plaintiff against the press defendants. Plaintiff goes on in the fourth paragraph to assert damages in injury to her reputation, "emotional and physical distress" from the article, and her need "to seek and receive medical aid and treatment" as a result.
The press defendants moved to dismiss the complaint as to them for failure to state a claim upon which relief can be granted. R. 4:6-2(e). On March 21, 2003, after hearing the parties' arguments, the trial court denied the motion for reasons stated in a written memorandum opinion. We granted leave to appeal, and now reverse.
The press defendants argue on appeal, as they did before the trial court, that
THE ARTICLE AT ISSUE IS PROTECTED BY THE FAIR-REPORT PRIVILEGE WHICH CAN ONLY BE OVERCOME BY A SHOWING THAT THE REPORT WAS NOT FULL, FAIR AND ACCURATE. MALICE OF THE COMMON LAW VARIETY OR CONSTITUTIONAL MALICE WILL NOT DEFEAT THE FAIR-REPORT PRIVILEGE.
The motion judge correctly defined the fair-report privilege:
The fair-report privilege is an exception to the general rule that liability may be imposed for the republication of a defamatory statement. Costello v. Ocean County Observer, 136 N.J. 594, 606, 643 A.2d 1012 (1994). The fairreport privilege permits the publication of defamatory statements uttered in judicial and other public proceedings. Id. at 607, 643 A.2d 1012. The purpose of the privilege is to protect the public's interest in knowing what occurs at public meetings. The underlying rationale is that the publisher is merely conveying to the public statements that members of the public would have heard had they been present in the public proceeding. Id. at 607, 643 A.2d 1012. See also Orso v. Goldberg, 284 N.J.Super. 446, 451, 665 A.2d 786 (App.Div.1995).
The fair-report privilege is a qualified privilege. It only applies to reports that are full, fair and accurate. Costello, 136 N.J. at 607, 643 A.2d 1012. The report must be a substantially correct account of what occurred. The fair-report privilege provides protection even though an article may not be accurate in every conceivable aspect. Ibid. In addition, the report must be fair. Nothing must be omitted or misplaced so as to convey an erroneous impression to the reader. The Court in Costello stated, "Although a reporter is allowed to make factual *964 errors and omissions, the fair-report privilege will not protect a story if the errors and omissions mislead readers." Id. at 608, 643 A.2d 1012.
The judge went on to note that
Plaintiff does not dispute the contention that the defendant newspaper fully, fairly and accurately reported James Hanna's statements at the public meeting of the River Vale School Board. The plaintiff nevertheless argues that there is a genuine issue of material fact as to whether the defendants published the report with Mr. Hanna's statements with malice.
The defendants argue that the fairreport privilege is only qualified by requirement that the report be a full, fair and accurate account of an official proceeding. The defendants contend that if the report meets that standard, there can be no liability for publishing the account even if it is published with malice.
The judge held correctly that proof of malice in making a report of a public meeting will subject the reporter and publication to liability, i.e., the press person or entity will be liable even if the report itself is a full, fair and accurate account of what transpired at a public meeting, if it was published with the knowledge that the reported statement was false or with a reckless disregard for its truth or falsity. See Costello, supra, 136 N.J. at 619-20, 643 A.2d 1012. The judge went on to rule that plaintiff's allegations in this matter were "legally sufficient" to withstand the motion to dismiss because "plaintiff has alleged in the complaint that defendants Darius Amos and Carolyn Molyneaux were aware that the facts stated in the October 17, 2001 article were false." We disagree with the conclusion that this allegation sufficed to defeat the motion. We reverse because plaintiff has pled no facts tending to support her assertion that the offending article was published with an awareness that the statements reported were false.
At the outset, we are constrained to note and disallow some arguments plaintiff has made on appeal which were not advanced before the trial court, see Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973), and which have no provenance in the four corners of the complaint even when it is viewed with the requisite liberality, see Printing Mart, supra, 116 N.J. at 746, 563 A.2d 31. For example, plaintiff now argues that the offending comment may not have been uttered at all during the course of the meeting, but made directly to the reporter either before or after the meeting. Plaintiff also argues for the first time on appeal that the published article was defamatory because it was an inaccurately edited version of what actually occurred. She contends "[i]t was an obligation of the reporter to explain the context of all [the statements made at both meetings] in a fair and accurate manner."
Plaintiff conceded at oral argument before us that she is limited on appeal to the issues she raised before the trial court. She is bound by that concession. See Howard Savings Bank v. Liberty Mutual Ins. Co., 285 N.J.Super. 491, 497, 667 A.2d 390 (App.Div.1995). We observe, however, in respect of the second new argument, that, in terms of the fairreport privilege, a press entity's obligation in circumstances such as those depicted here is to report accurately what occurs at a public meeting. It has a right to present, by way of background, reports of other public events that it regards as necessary to provide perspective, see Swede v. Passaic Daily News, 30 N.J. 320, 334, 153 A.2d 36 (1959), and a general responsibility to provide a context in order to assure that the report is fair and accurate, see *965 Costello, supra, 136 N.J. at 611, 643 A.2d 1012; but, the responsibility to provide context does not exist because of any obligation to protect a public figure's reputation. Moreover, such context-providing responsibility as exists cannot be applied to impose particular content requirements. To hold otherwise would place undue control over the content of news reports in others, including the courts, in violation of the First Amendment to the United States Constitution. See Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 258, 94 S.Ct. 2831, 2839-40, 41 L.Ed.2d 730, 741 (1974).
We hasten to note that although our courts have, for good and ample reason, rejected the "malice" rubric as "add[ing] nothing to the legal analysis of an allegedly defamatory statement, and... a [likely] pitfall in the underbrush of the common law," Dairy Stores, Inc. v. Sentinel Publ'g Co., 104 N.J. 125, 151, 516 A.2d 220 (1986), the test governing matters such as this, typically referred to as "the actual malice standard," remains. See, e.g., id. at 149, 516 A.2d 220. The governing criteria have been "defined ... as knowledge that the facts were false, or reckless disregard for their truth or falsity." Ibid. (citing New York Times v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 725-26, 11 L.Ed.2d 686, 706 (1964)).
[T]he relevant test is not "whether a reasonably prudent man would have published, or would have investigated before publishing," but "whether the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968). That test, which is substantially subjective, is akin to the common law requirement that to qualify as fair comment, a statement must honestly express the writer's true opinion.

[Ibid.]
Plaintiff's allegation of actual malice, i.e., knowledge of falsity or reckless disregard for truth or falsity, is unsupported by any factual contentions offered to substantiate the assertion. To permit a defamation action against press persons or entities to survive on the basis of a mere allegation of knowledge of falsity or reckless disregard affords insufficient breathing space to the critical rights protected, in the public interest, by the First Amendment, and to the fair-report privilege which serves the same fundamental policies.
Typically, on a summary judgment motion, in defamation actions and in general, the non-moving party is required to make a prima facie showing of the existence of sufficient factual dispute to justify committing the matter to determination by the finder of fact. See, e.g., Orso v. Goldberg, 284 N.J.Super. 446, 665 A.2d 786 (App.Div. 1995). If the prima facie showing is made, the motion will be denied to afford the claimant adequate opportunity to flesh the matter out through discovery and plenary proofs. If no sufficient prima facie showing is made on the motion, the matter is amenable to summary judgment.
A motion to dismiss for failure to state a claim is in a different posture. Normally, the facts as pleaded must be taken to be true for the purposes of the motion, and the court's "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart, supra, 116 N.J. at 746, 563 A.2d 31; see also Rieder v. Department of Transportation, 221 N.J.Super. 547, 552, 535 A.2d 512 (App.Div.1987).
Yet, when the allegations of a defamation complaint, as here, are limited to the fact of publication and a bare conclusory assertion that the press defendants "knew and/or reasonably should have known that the statement ... was false," *966 with no other factual reference to lend support to the contention, the court may not simply take the facial assertion as a given, but rather must evaluate the circumstances as best it can to determine whether there is any reasonable basis upon which the defamation claim can be seen to be viable. Were it otherwise, any person or entity claiming First Amendment protection would be at the mercy of a claimant's empty assertions unsupported even by any contentions regarding surrounding facts. This is especially so where the circumstances involve an account of a public proceeding and implicate the values protected by the fair-report privilege.
It is not enough for [a] plaintiff[ ] to assert ... that any essential facts that the court may find lacking can be dredged up in discovery. A plaintiff can "bolster a defamation cause of action through discovery, but not [ ] file a conclusory complaint to find out if one exists." Zoneraich v. Overlook Hosp., [212 N.J.Super. 83, 101-02, 514 A.2d 53 (App.Div.), certif. denied, 107 N.J. 32, 526 A.2d 126 (1986),] ... [A] plaintiff must plead the facts and give some detail of the cause of action.

[Printing Mart, supra, 116 N.J. at 768, 563 A.2d 31.]
Zoneraich did not involve issues of public interest or a plaintiff who was arguably a public figure. Nevertheless, we ruled that the trial court had properly dismissed a defamation claim, stating that "[t]he sole reference to the claim in plaintiff's pleading is in a single portmanteau paragraph.... charg[ing]: * * * `The defendants have ... slandered and defamed her and wilfully, unlawfully and maliciously exposed her to public ridicule.' " Zoneraich, supra, 212 N.J.Super. at 101, 514 A.2d 53. We regarded "no other part of the complaint" as alleging a sufficient factual basis to support the defamation claim. Ibid. We went on to declare:
A complaint must contain a statement of the facts on which the claim is based, showing that plaintiff is entitled to relief. R. 4:5-2. It must state the essential elements of a cause of action simply, concisely and directly. * * * In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough. * * *

[Ibid. (Citations omitted).]
We are mindful that the dismissal ruling reviewed in Zoneraich occurred on a motion for summary judgment, see id. at 89, 514 A.2d 53, rather than on a motion to dismiss for failure to state a claim. Yet, by applying the Zoneraich standard to a situation involving a motion to dismiss for failure to state a claim, the Supreme Court in Printing Mart must be taken to have determined that, in defamation actions, the standards of inquiry a trial court is obliged to apply in the respective situations are more congruent than different.
The congruence is especially plain in public-figure or public-issue defamation cases in which the fair-report privilege is implicated. It is not sufficient, in such a matter, given the expressive interests and constitutional policies at stake, merely to allege that the report of a defamatory comment was made and that the press defendants knew or should have known it was false. The complaint, even with the especially indulgent treatment accorded contentions on motions to dismiss, see Printing Mart, supra, 116 N.J. at 773, 563 A.2d 31, must also allege sufficient particularized facts to suggest that the insulation normally provided by the fair-report privilege is not available in the matter at hand, i.e., supporting the contention that the report *967 was not a substantially correct and fair account of what occurred or that it was published with knowledge of its falsity or a reckless disregard for the truth or falsity of the reported statement.
As in Zoneraich, the single conclusory assertion in the third paragraph of the second count of the complaint, that defendants "knew and/or reasonably should have known that [Hanna's] statement... was false," even coupled with the balance of the third paragraph and the damages alleged in the fourth paragraph, does not pass muster. See Printing Mart, supra, 116 N.J. at 768, 563 A.2d 31; Nagib v. News-Sun, 64 Ill.App.3d 752, 21 Ill.Dec. 567, 381 N.E.2d 1014, 1017 (1978)("general statement, unsupported by any factual allegations" insufficient to establish the "actual malice" needed to overcome the fairreport qualified privilege); Halpern v. News-Sun Broadcasting Co., 53 Ill.App.3d 644, 11 Ill.Dec. 454, 368 N.E.2d 1062, 1068 (1977)("a failure to allege facts supporting a charge of malice is fatal to the complaint"); Stice v. Beacon Newspaper Corp., 185 Kan. 61, 340 P.2d 396, 401 (1959)("[T]here are no factual allegations of actual malice or evil-mindedness with intention to harm. Malice is merely a conclusion of law which is based upon facts. * * * [M]ere averment that the words printed or published were malicious is not sufficient. * * * To withstand a demurrer, the plaintiff must allege the ultimate facts constituting actual malice."); Johnson v. Herald Co., 116 Mich.App. 523, 323 N.W.2d 468, 469 (1982); Pollock v. Rashid, 117 Ohio App.3d 361, 690 N.E.2d 903 (1996)(allegations of complaint sufficient to state a viable defamation claim). See also, Cibenko v. Worth Publishers, Inc., 510 F.Supp. 761 (D.N.J.1981). But see Berkos v. National Broadcasting Co., 161 Ill.App.3d 476, 113 Ill.Dec. 683, 515 N.E.2d 668 (1987)(after considering factual allegations beyond those stated in the complaint, the appeals court reversed the order dismissing the defamation complaint).
Accordingly, because the complaint is bereft of any particular factual allegations beyond a bare contention that the press defendants acted in a way that permits plaintiff to overcome the insulation the fair-report privilege confers, we conclude that count two of the complaint should be dismissed. This result is required by First Amendment policies and the responsibilities of courts to avoid rulings that unduly chill the press's freedom to report on matters of public interest.
The March 21, 2003 order of the trial court is reversed. Count two of the complaint is dismissed, and the matter is remanded for further proceedings on count one.