# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0773-24

C.H. and S.H., a minor child,

     Plaintiffs-Appellants,

v.

DEPARTMENT OF CHILDREN
AND FAMILIES, DIVISION OF
CHILD PROTECTION AND
PERMANENCY, DEPARTMENT
OF CHILDREN AND FAMILIES,
MORRIS WEST LO, STATE OF
NEW JERSEY, D.H., C.H., CH.H.,
CRISTINA PEREZ, ROSALBA
AVILA, JENNIFER BOUDREAU,
FELIPE SANCHEZ, D.W., JOSEPH
J. REISENMAN, M.D., and ALLISON
STRASSER WINSTON, PH.D.,

     Defendants-Respondents.

_____

Submitted January 12, 2026 – Decided March 19, 2026

Before Judges Sabatino, Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1932-23.

Hegge & Confusione, LLC, attorneys for appellants (Michael Confusione, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondents Department of Children and Families, Division of Child Protection and Permanency, Cristina Perez, Rosalba Avila, Jennifer Boudreau and Felipe Sanchez (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Phoenix N. Meyers, Deputy Attorney General, on the brief).

Deininger & Associates LLP, attorneys for respondent Ch.H. (Christopher L. Deininger, on the brief).

Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys for respondent Dr. Joseph J. Reisenman, M.D. (Michael R. Ricciardulli, of counsel and on the brief; Kristin J. Brummer, on the brief).

Malapero Prisco Klauber & Licata, LLP, attorneys for respondent Dr. Alison S. Winston, Ph.D. (Richard J. Teer, on the brief).

PER CURIAM

Plaintiffs C.H.[1] and her child S.H.[2] ("Sara") appeal from the dismissal of their multi-count civil complaint against defendants Department of Children and

---

[1] We reference C.H. as plaintiff in this opinion.

[2] We use initials and pseudonyms for the minor child and the non-government parties because the underlying proceedings involved the Department of Children and Families, Division of Child Protection and Permanency ("Division"). R. 1:38-3(d)(12).

Families, Division of Child Protection and Permanency (collectively "the Division"), Christina Perez, Rosalba Avila, Jennifer Boudreau, and Felipe Sanchez (collectively referenced as the "Division employees"), plaintiff's brother defendant Ch.H.[3] ("Charles") and defendants Dr. Joseph J. Reisenman and Dr. Alison S. Winston following a series of investigations, institution, and ultimate dismissal of legal proceedings filed by the Division against plaintiff. After our de novo review of the record and application of the relevant legal principles, we affirm for the detailed and cogent reasons set forth in the written opinion of Judge Louis S. Sceusi.

I.

This action arose from the investigation and legal proceedings instituted by the Division against plaintiff concerning the care of her daughter Sara following a series of pediatric health concerns and complicated family dynamics. In November 2021, plaintiff observed swelling in Sara's left knee, which prompted visits to the Morristown Medical Center emergency room, Holy Name Hospital, and her pediatrician, Dr. Reisenman. Despite various medical assessments, the cause of Sara's symptoms was unclear, and she continued to

---

[3] Ch.H. ("Charles") is plaintiff's brother.

A-0773-24

experience physical symptoms over subsequent weeks leading to further consultations with medical specialists.

As the medical investigation proceeded, family tensions escalated, particularly between plaintiff and her own parents, defendants D.C. ("Danielle") and C.H. ("Carter"), who frequently accompanied plaintiff to the child's medical appointments. During repeated health visits, Sara eventually disclosed that defendant D.W. had kicked her in the knee, prompting plaintiff to report the incident to the police.

After Sara's evaluation at various hospitals, Dr. Reisenman reported suspected Munchausen Syndrome by Proxy[4] to the Division concerning plaintiff's care for Sara. Following the referral, the Division engaged in an investigation and ultimately instituted legal proceedings against plaintiff under N.J.S.A. 9:6-8.21 ("Title 9") and N.J.S.A. 30:4C-12 ("Title 30"), seeking care and supervision of Sara based on allegations of child abuse and neglect. In

---

[4] Munchausen syndrome by proxy, now commonly known as factitious disorder imposed on another, is a serious form of abuse and a mental health condition. It occurs when a caregiver—typically a parent—falsifies, exaggerates, or induces illness or injury in a person under their care, such as a child in order to gain attention, sympathy, or validation for themselves. Factitious Disorder Imposed on Another ("FDIA"), Cleveland Clinic, www.myclevelandclinic.org/health/diseases/9834-factitious-disorder-imposed-on-another-fdia#overview (last visited March 10, 2026).

connection with these proceedings, plaintiff—by court order—was evaluated by Dr. Winston, a psychologist retained by the Division. Sara was also subject to evaluations and continued monitoring.

Shortly thereafter, Dr. Reisenman submitted a letter recanting his earlier suspicions of plaintiff and attributed his initial referral to "bad information" he received concerning plaintiff. According to plaintiff, such "bad information" originated from misrepresentations by her family members, primarily plaintiff's mother, Danielle. Despite this letter, the Title 9 and Title 30 proceedings continued for several months thereafter.

After months of litigation and several trial adjournments, the Division ultimately withdrew its complaint against plaintiff, resulting in the court finding no allegations were substantiated. Although she was exonerated, plaintiff alleged significant harm had already occurred. As a result of the proceeding, she claimed that as a result of being listed in the Child Abuse Record Information Registry, her ability to work with children was temporarily restricted, she incurred in excess of $200,000 in legal costs and suffered reputational and emotional damages.

On October 31, 2023, plaintiff filed a complaint in the Law Division against defendants. The complaint included nine counts alleging malicious

prosecution, intentional infliction of emotional distress, defamation, malicious abuse of legal process, violations under the New Jersey Law Against Discrimination, negligent hiring and retention, violation of the New Jersey Civil Rights Act, failure to train and negligent infliction of emotional distress.

In December 2023 and January 2024, all defendants filed motions to dismiss plaintiffs' complaint,[5] asserting that the complaint failed to state a claim based on several legal grounds. Following oral argument held on August 5, 2024, the trial judge issued a detailed opinion granting all defendants' motions and dismissing the complaint with prejudice as to the Division, Division employees, Dr. Reisenmann, Dr. Winston and plaintiff's brother Charles.

The judge concluded that all claims against the moving defendants were legally insufficient, barred by statutory or common law immunities/privileges or failed to allege facts meeting the required legal elements. The court further found no factual or legal basis on which discovery could cure these deficiencies in the pleadings.

On appeal, plaintiff contends:

---

[5] Plaintiff's parents, Danielle and Carter also filed a motion to dismiss the complaint. However, the motion was deemed moot by the court pursuant to a stipulation of dismissal filed prior to the motion return date, leaving Charles as the sole remaining family member-defendant.

THE LAW DIVISION ERRED IN GRANTING THE DEFENDANTS' MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT.

## II.

We apply a de novo standard of review to a trial judge's order dismissing a complaint under Rule 4:6-2(e). See Stop & Shop Supermarkets Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017) (quoting Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 413 (App. Div. 2014)). Under the rule, we owe no deference to the motion judge's conclusions. Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011). "[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). "The complaint must be searched thoroughly 'and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Printing Mart, 166 N.J. at 746). However, "[a] pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Fam. Assocs., 423 N.J. Super. at 113.

A-0773-24

Based on our de novo review of the record, we conclude the trial judge's factual findings and legal conclusions properly applied the Rule 4:6-2(e) standard as to all counts of plaintiff's complaint and affirm the trial judge's order substantially for the reasons set forth in his written decision. R. 2:11-3(e)(1)(A). We add the following comments to amplify upon selective portions of the judge's reasoning.

We further uphold dismissal of the plaintiff's complaint, as the court correctly applied:  (1) the legal immunities to the Division and Division employees; (2) the legal immunities and privileges to Drs. Reisenman and Winston; and (3) the statute of limitations and the specificity requirements to the defamation claims against Charles.

A.

We begin by discussing the immunities provided to a public entity and its employees.  As a general matter, the Division "is charged with the responsibility to investigate all allegations of child abuse or neglect." S.C. v. New Jersey Dept. of Child. & Families, 242 N.J. 201, 211 (2020) (citing N.J.A.C. 3A:10-7.3(c)). Under the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 to 12-3, "public entities [such as the Division] shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform

principles established herein." N.J.S.A. 59:1-2. The approach of the TCA is to broadly limit public entity liability. See Jones v. Morey's Pier, Inc., 230 N.J. 142, 154 (2017). The TCA is strictly construed to effectuate that purpose. McDade v. Siazon, 208 N.J. 463, 474 (2011). Generally, courts are instructed to find immunity for public entities with liability as the exception. Lee v. Brown, 232 N.J. 114, 127 (2018). Individual public employees are liable for injuries caused by their act or omission to act to the same extent a private person would be. N.J.S.A. 59:3-1.

The TCA grants absolute immunity from liability to public entities and their employees for injuries resulting from a failure to enforce the law. Lee, 232 N.J. at 127-28. N.J.S.A. 59:3-5 provides: "A public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." In contrast, public employees are entitled to qualified immunity when they are enforcing the law. N.J.S.A. 59:3-3 ("A public employee is not liable if he acts in good faith in the execution or enforcement of any law.").

"[T]he critical distinction between the qualified, good-faith immunity of [N.J.S.A. 59:3-3] and the absolute immunity of section [N.J.S.A. 59:3-5] is action as opposed to nonaction with respect to the enforcement of the law."

Bombace v. City of Newark, 125 N.J. 361, 368 (1991). Qualified good faith enforcement immunity "applies 'only when an act has taken place with knowledge of the facts and the law,'" whereas failure-to-enforce immunity "applies when there is no 'act.'" Ibid. (quoting Marley v. Borough of Palmyra, 193 N.J. Super. 271, 293 (Law Div. 1983)).

To pierce qualified immunity under the TCA, a plaintiff must prove more than ordinary negligence. Canico v. Hurtado, 144 N.J. 361, 365 (1996). Qualified immunity is not provided to public employees under certain circumstances as set forth at N.J.S.A. 59:3-14(a), providing public employees are subject to full liability "if it is established that [their] conduct was outside the scope of [their] employment or constituted a crime, actual fraud, actual malice[,] or willful misconduct." The willful misconduct exception is intended to target "a public employee guilty of outrageous conduct[.]" Velez v. City of Jersey City, 180 N.J. 284, 291 (2004) (quoting Margolis & Novack, Title 59: Claims Against Public Entities, cmt. on N.J.S.A. 59:3-1(c) (2004)). Thus, one "traditional formulation of willful misconduct has required 'a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences.'" Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 584 (2009) (quoting Berg v. Reaction Motors

A-0773-24

Div., Thiokol Chem. Corp., 37 N.J. 396, 414 (1962)). Neither "[c]arelessness, unreasonable conduct or even noncompliance with substantive law" are necessarily sufficient to strip an employee of immunity. Van Engelen v. O'Leary, 323 N.J. Super. 141, 154 (App. Div. 1999).

In addition, in order to impose liability of a public employee under the TCA it also "depends on whether the conduct of individuals acting on behalf of the public entity was ministerial or discretionary." Est. of Gonzalez v. City of Jersey City, 247 N.J. 551, 571 (2021) (quoting Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 490 (2014) (citing N.J.S.A. 59:2-3(d))). "When a public entity's or employee's actions are discretionary, liability is imposed only for 'palpably unreasonable conduct.'" Ibid. (quoting Henebema, 219 N.J. at 495). Liability for ministerial acts "is evaluated based on an ordinary negligence standard." Ibid. (quoting Henebema, 219 N.J. at 490).

"A 'discretionary act . . . calls for the exercise of personal deliberations and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.'" S.P. v. Newark Police Dept., 428 N.J. Super. 210, 230 (App. Div. 2012) (omission in original) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 495 (1985)).

11

In contrast, "a ministerial act, which is not granted immunity under the TCA, is an action 'which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.'" Gonzalez, 247 N.J. at 571-72 (quoting S.P., 428 N.J. Super. at 231).

Here, the actions of the Division and Division employees, including the allegations made in the complaint against plaintiff, were subject to the bar against liability because their acts were discretionary. In addition, the Division and its employees were entitled to the qualified immunity protections of the TCA. We agree with the trial judge that the complaint's allegations against the Division and its employees involved discretionary functions of the Division and its employees because they relied upon the statements and information provided through the investigation and medical reports and made personal judgments to institute proceedings against plaintiff. We further conclude qualified immunity protections were appropriately granted by the judge to the Division and its employees. No genuine issues of material fact in the record disputed that the Division and its employees acted in good faith and duly considered the reported information they obtained from their investigation, resulting in the filing of the

12

complaint against plaintiff enforcing the provisions of Title 9 and Title 30 based on plaintiff's alleged abuse of Sara.

Additionally, as defendants noted, plaintiff describes the Division and its employees' conduct as negligent, not willful, in their complaint. They assert that the Division and its employees "neglected to investigate and address discoveries," and that "[t]hese biased judgments led to negligent decisions and actions instituted and perpetuating Title 9 and Title 30 actions against [plaintiff]." This argument undermines plaintiff's claims, as negligent conduct is inherently not intentional or deliberate. As mentioned above, our case law clearly rejects the notion that carelessness or unreasonable conduct is sufficient to strip public employees of immunity. Van Engelen, 323 N.J. Super. at 154. Therefore, plaintiff has not presented prima facie proofs of the elements of N.J.S.A. 59:3-14(a) to pierce the qualified immunity protections afforded to the Division and its employees under the TCA.

## B.

We next address plaintiff's claims against Dr. Winston and Dr. Reisenman. We conclude, as did the trial judge, that plaintiff's claims against Dr. Winston were barred by the litigation privilege. This privilege shields "any communication (1) made in judicial or quasi-judicial proceedings; (2) by

A-0773-24

litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Buchanan v. Leonard, 428 N.J. Super. 277, 286 (App. Div. 2012) (citing Loigman v. Twp. Comm. of Twp. of Middletown, 185 N.J. 566, 578 (2006)). The privilege is not confined to the courtroom and "extends to all statements or communications in connection with the judicial proceeding." Ruberton v. Gabage, 280 N.J. Super. 125, 133 (App. Div. 1995) (citations omitted). The litigation privilege "may be extended to statements made in the course of judicial proceedings even if the words are written or spoken maliciously, without any justification or excuse, and from personal ill will or anger against the party defamed." DeVivo v. Ascher, 228 N.J. Super. 453, 457 (App. Div. 1988) (citation omitted).

Additionally, "[p]retrial communications by parties and witnesses are protected 'to promote the development and free exchange of information and to foster judicial and extra-judicial resolution of disputes.'" Hawkins v. Harris, 141 N.J. 207, 218 (1995) (quoting Gen. Elec. Co. v. Sargent & Lundy, 916 F.2d 1119, 1129 (6th Cir. 1990)). "The only limitation which New Jersey places upon the privilege is that the statements at issue 'have some relation to the nature of

14

the proceedings.'" Rabinowitz v. Wahrenberger, 406 N.J. Super. 126, 134 (App. Div. 2009) (quoting Hawkins, 141 N.J. at 215).

We conclude the allegations in the complaint and motion record do not support that Dr. Winston purposefully or maliciously provided false statements to the Division concerning plaintiff. In addition, her statements clearly related to the legal proceedings. Dr. Winston was retained by the Division to serve as an expert in the litigation, and her conclusions were manifestly founded upon her good faith professional observations based on her review of the medical and investigatory records. We therefore conclude the judge's dismissal of all claims against Dr. Winston was not error.

Turning to Dr. Reisenman, we conclude he was immune from civil liability pursuant to N.J.S.A. 9:6-8.10, which states: "[a]ny person having reasonable cause to believe that a child has been subjected to child abuse, including sexual abuse, or acts of child abuse shall report the same immediately to the Division [] by telephone or otherwise." The Act provides civil and criminal immunity to individuals who report possible abuse or neglect of children pursuant to the Act. See N.J.S.A. 9:6-8.13 (stating"[a]nyone acting pursuant to this act in the making of a report [of child abuse] under this act shall have immunity from any liability, civil or criminal, that might otherwise be

15

incurred or imposed."). "[T]he Legislature intended that 'reasonable cause to believe' that a child has been subjected to child abuse requires a reasonable belief based on the facts and circumstances known to the person on the scene." L.A. v. N.J. Div. of Youth & Fam. Servs., 217 N.J. 311, 327 (2014).

The record clearly indicates that Dr. Reisenman abided by his statutory duty to report suspected child abuse because an objective review of the evidence supported a reasonable belief that child abuse had occurred under these circumstances, including multiple visits by Sara to his office and other medical providers, unexplained/unclear causes for Sara's injuries and statements from Danielle concerning alleged abuse of Sara by plaintiff. Additionally, the record does not contain any evidence that Dr. Reisenman's report to the Division was made with the sole purpose of damaging plaintiff or that it was malicious. In fact, his recantation letter supports his overall objectivity, not bias or malice towards plaintiff. Therefore, we conclude the trial judge's dismissal of claims against Dr. Reisenman based on the statutory immunity provided by N.J.S.A. 9:6-8.13 was not error.

Although we certainly can appreciate plaintiff's frustration with the underlying litigation, including the substantial costs she incurred to defend the Division's legal action and the emotional toll upon her, our state's jurisprudence

16

has stressed the importance of the litigation privilege and the immunities provided by N.J.S.A. 9:6-8.13.

> Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation, it is not surprising that . . . the litigation privilege[] has been referred to as "the backbone to an effective and smoothly operating judicial system."
>
> [Hawkings v. Harris, 141 N.J. 207, 222 (1994) (citing Silberg v. Anderson, 786 P.2d 365, 370 (1990)).]

Likewise, the Legislature recognized an overriding need to encourage the reporting of child abuse, by not only providing immunity to persons making such reports, but also by making it a disorderly persons offense to fail to report where there is "reasonable cause to believe that an act of child abuse has been committed. . . ." N.J.S.A. 9:6-8.14. We conclude the judge appropriately recognized the overall purposes of the above privileges and immunities and his dismissal of plaintiff's claims against the doctor defendants based on such was not error.

III.

We now briefly address plaintiffs' defamation claim against her brother Charles—the only remaining defendant-family member at the time of the disposition of the motion. Based on our de novo review, we concur with the

17

reasons expressed by the trial judge concerning this claim and conclude the defamation claims against Charles fail as being both untimely and lacking the required specificity.

Under N.J.S.A. 2A:14-3, "[e]very action at law for libel or slander shall be commenced within [one] year next after the publication of the alleged libel or slander." This reason alone was a sufficient basis for the trial judge to dismiss the defamation claims against Charles. Plaintiff's complaint was filed on October 31, 2023, well more than a year after the alleged statements were claimed to be made in February 2022 and from the filing of the Division's complaint against plaintiff on March 4, 2022.

However, even if we were to consider plaintiff's defamation claims as timely under the discovery rule, we conclude the complaint failed to attribute any defamatory statement specifically published by Charles and specify the content of the defamatory statements made by him. The complaint primarily alleged the defamatory statements were made by her mother, Danielle, whose stipulated dismissal from this case is not before us.

To plead a claim a valid claim for defamation, plaintiffs are required to specifically allege the actual statements that serve as the basis of the claim and when they were made. See Darakjian v. Hanna, 366 N.J. Super. 238, 248-49

18

(App. Div. 2004) ("In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough."); see also Russo v. Nagel, 358 N.J. Super. 254, 269 (App. Div. 2003) ("In order to properly plead a claim for [defamation] the defamatory words must be identified."). Plaintiff's complaint was insufficient under these legal standards and appropriately dismissed by the trial judge.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division